VINCENT HAMMOND *vs.* CHARLES H. HAINES, CLERK OF THE
CIRCUIT COURT FOR CECIL COUNTY.

CONSTITUTIONAL LAW: ACT OF 1864, CH. 348,—RELATING TO THE ISSUING
OF LICENSES TO SELL SPIRITUOUS LIQUORS IN THE BOROUGH OF NORTH
EAST, CECIL COUNTY: MANDAMUS.—The Act of 1864, ch. 348, gave to
the qualified voters residing in the borough of North East, in Cecil
county, the privilege of deciding by ballot whether any license to sell
spirituous and fermented liquors, &c., should be granted, &c., to any
person to sell the same within the limits of the borough, and in case
they should decide adversely to the issuing the license, made it unlawful
for the clerk of the Circuit Court to issue the same. The said voters, at
an election, decided by ballot that no such license should issue, and their
action was in due form certified to the clerk of the Circuit Court of said
county, and filed in his office. H. having applied for such a license,
and the application having been refused by the clerk, filed his petition
in said Court for a *mandamus* to compel the clerk to issue the license,—
the object of the proceeding being to test the constitutionality of the
law.—HELD:

1st. That the Act in question does not belong to that class of laws which
contain express provisions for referring them to a vote of the people for
their acceptance *before it can become a law;* the law, as it passed the
Legislature, is complete in itself,—requiring no other sanction.

2nd. That the borough of North East, being an incorporated borough or
municipality, with the usual powers to pass by-laws and ordinances for
its police regulations, it was competent for the Legislature to confer
upon it the power to prohibit the sale of ardent spirits within its limits,
notwithstanding the general license law of the State. In such case, the
local law would prevail.

APPEAL from the Circuit Court for Cecil county.

Petition for a *mandamus* by the appellant, to compel the
appellee, the clerk of the Circuit Court, to issue to him a
license to sell spirituous liquors in the borough of North
East, in Cecil county. The case is fully stated in the opinion
of this Court. This appeal is from an order of the Court
below, (PRICE, J.,) overruling a motion of the petitioner to
quash the return and for a peremptory *mandamus*, and de-

claring the return of the respondent sufficient, and also discharging the rule to show cause, and dismissing the petition with costs to be paid by the petitioner.

The cause was argued before Bartol, Goldsborough, Cochran, and Weisel, J.

*Alexander Evans* and *Albert Constable* for the appellant.

1st. That no authentic evidence of a due election and its results has been presented to the Court, because that while the law requires the election to be by qualified voters, the return fails to state either that they were qualified, or that the election was held in accordance with the Act of Assembly of the tenth of March, 1864. *Harwood vs. Marshall*, 10 *Md. Rep.*, 463 to 466. *Mills vs. Martin*, 19 *Johnson*, 37. 2 *Phillips' Ev.*, 157. *Howard vs. Gossitt*, 82 *Eng. C. L. Rep.*, 382.

2nd. That the Act of the tenth of March, 1864, is unconstitutional because it is contrary to the limitations of legislative power necessarily involved in a representative republican form of government; that the people cannot make a law,—neither the whole people nor a part of them. All laws must be made by the representatives in General Assembly met for deliberation, consultation and judgment, acting under oath and under the restrictions of the Constitution. *Art. 3rd, sec. 28th, Constitution of Md. Art. 6th of the Declaration of Rights. Rice vs. Foster*, 4 *Harrington*, 479. *Geebrick vs. The State*, 5 *Iowa Reports*, 492. *People vs. McSpedden*, 23 *Barbour*, 349. *Bradley vs. Baxter*, 15 *Barbour*, 122. *Thorn vs. Cramer*, 15 *Barbour*, 112. *Parker vs. The Commonwealth*, 6 *Barr.*, 507.

3rd. That the motion to quash was the proper proceeding to test the sufficiency of the return. *The King vs. St. Catharine Dock Company*, 24 *Eng. C. L. Rep.*, 71, 72. *Harwood vs. Marshall*, 10 *Md. Rep.*, 452.

*W. J. Jones* for the appellee.

Of the three points made by the appellant in this case, but one, the second, is material to the real issue, the constitutionality of the Act of 1864, ch. 348.

The first point, the technical insufficiency of the return, was never made or hinted at in the Court below, and should not be seriously regarded by this Court, because it cannot be decisive either of the real issue in the case, or the rights or interests of the parties litigant. If it were even true, as the appellant alleges, that the return is technically insufficient, no peremptory *mandamus* could now issue to require the clerk of Cecil county Circuit Court to issue to Vincent Hammond a license to keep an ordinary in the village of North East, in the year commencing on the first day of May, 1864.

Nor, I apprehend, would such a decision by this Court enable the said Hammond to recover damages for the refusal in 1864, if the clerk could show, as undoubtedly he could, that notwithstanding the technical defect in his return, the fact was that the returns of the election showed that it was an election of qualified voters.

But the point is bad in itself, and is not sustained by authorities. This case is not, like that of *Harwood vs. Marshall*, to be decided by the "abstruse, technical, and almost forgotten, learning of antiquity." It is within the provisions of the 9th Anne, re-enacted in Maryland by the Act of 1828, and the Code, Article LIX; and these "ancient rules have been greatly relaxed, and no longer require the exclusion of reasonable, rational, natural and *legal* intendment or inference." *Harwood vs. Marshall*, 10 *Md. Rep.*, 463, 464.

But under no rule of construction, however technical, can this return be deemed bad. It sets out in full the law authorizing the commissioners of the borough of North East to call an election "for the purpose of deciding, by ballot, whether any license to sell spirituous or fermented liquors,

of any kind or description, should be granted or issued by the clerk," &c., and then further states that the election was called in the very precise words, *verbatim et literatim*, of the Act of Assembly. Even the "certainty of strictness which governed indictments," referred to in *Harwood vs. Marshall*, is here complied with, for it is always sufficient in indictments to quote the words of the statute. *U. S. vs. Patterson*, 6 *McLean*, 466. *U. S. vs. Golding*, 2 *Cranch C. C. Rep.*, 212. *State vs. Dent*, 3 *G. & J.*, 8.

But it is said the return must state that it was an election of "qualified voters," and 2 *Phil. Ev.*, 157, is relied upon as authority; but a continued investigation of that mine of legal learning would have shown this case to be not one in point. Our case is entirely and strikingly within the case of *Brittain vs. Kinnaird*, cited in the same book, pages, 158, 159, and 160; and upon page 162, the learned annotators say: "It is pleasant to witness the dawn of a principle which shall go, in any considerable degree, to mitigate the harshness with which jurisdictional mistakes are oftentimes visited." As in the case of *Brittain vs. Kinnaird*, the magistrate was to decide whether the vessel was a boat or not before he could act at all, the law only authorizing him to seize or condemn "*boats ;*" so in this case, the proper authorities were to decide whether the election was one of "qualified voters." They held an election to decide "whether any license to sell spirituous or fermented liquors, &c., should be granted or issued by the clerk, &c., using in their certificate precisely the words of the statute, as our return states. The law authorized an election to be held for such purpose only of qualified voters, and having held an election for this purpose, and made their certificate to the clerk, it was necessary to state in our return that it was an election of "qualified voters." They could have held no election other than one of qualified voters for this purpose. They were "required to settle and ascertain

by their decision the fact upon which 'their jurisdiction' to hold the election and return the certificate 'depended.' This fact they did settle and ascertain, and the evidence of it is, that they held the election for this purpose, and made certificate of the same to the clerk. It was unnecessary to set it out in our return, "the return answers all the material allegations of the petition of the plaintiff below and the writ, as required in *Harwood vs. Marshall.*"

Suppose that the clerk had refused to issue the license to Hammond because the grand jury had recommended it to be withheld, or because the Court had ordered it suppressed according to Article 56, sec. 92, Code of General Laws, would he have been compelled to state in his return to the *mandamus,* that all the jurors were twenty-five years of age, or that the Court had suppressed the license because the party had sold liquor on Sunday, or kept a disorderly house, &c.? And yet, the person's right to a license could no more be taken away by a disqualified jury, or without being proven guilty of some offence, than it could by disqualified voters. See *Burgess vs. Pue,* 2 *Gill,* 286, that it is not necessary to set out all the particulars of elections.

2nd. The Court below was right in its decision, because the Act of 1864, chap. 348, made it unlawful for the clerk to issue the license, and that Act is constitutional. Whatever may have been the policy in other States, this tribunal has always regarded, with great consideration, the action of co-ordinate branches of the government, and in regard to the legislature, have uniformly decided that every inference and presumption is in favor of the validity of its Acts, and that before it would declare an Act of Assembly unconstitutional, it must appear on its face to be a clear violation of the Constitution.

"A legislative Act should not be pronounced unconstitutional or invalid in a doubtful case." *Regents of University of Maryland,* 9 *G. & J.,* 383.

To pronounce a law unconstitutional, "is an exercise of the judicial office of a grave and delicate nature, which can never be warranted but in a clear case. *State, use of Washington County vs. Balto. & Ohio R. R. Co.*, 12 *G. & J.*, 438.

Before a law can be declared unconstitutional, "its repugnancy to the provisions or necessary implications of the Constitution must be manifest and free from all reasonable doubt." Opinion of LeGrand, C. J, in *Mayor, &c. vs. State*, 15 *Md. Rep.*, 475.

"In cases of doubt on the question of power, it would be improper to interfere. We could not do so without assuming ( when it did not clearly appear ) that the Constitution had been violated, which should not be predicated of another department in discharge of functions peculiarly its own, as the law making power. This is the settled doctrine in this State, and as far as we are informed, in every case in which the question has been considered." Same case, opinion of Tuck, J., 453.

In this light, let us examine this Act. Stripped of verbiage, it is nothing more or less than a grant of power to the town or borough of North East to regulate its domestic affairs. In this Act there is no delegation of legislative power to the people. It does not enact that certain things shall be done if the provisions of the law are ratified by the people. It is perfect and complete in itself, a specific grant of power; needing no action of the voters to put it in force or complete it, and entirely beyond the possibility of being defeated by any popular vote. Whether the people vote one way or another, no more affects the law than does the result of a popular election for public officers affect the law giving to the people the right to hold such elections. The law continues in force irrespective of the result of the election in any year or number of years, and gives to the people the right to hold said election every year until the law is repealed by the legislature. In this respect it differs radically from a majority of

the cases cited for the appellant. In *Bradley vs. Baxter*, and *Thorn vs. Cramer*, 15 *Barb.*, the Act under consideration provided that "the electors shall determine by ballot, at the annual election to be held in November, whether this Act shall or not become a law." See that book, pages 113 and 125. In *The People ex. rel. McSpeddon vs. Stout*, 23 *Barb.*, (see page 355,) the words of the Act are: "If a majority of tickets contain an approval of said Act, then the same should become a law; if a majority contain a disapproval of the Act, then the said Act should be void." In *Geebrick vs. The State*, 5 *Iowa*, the Act under consideration was held unconstitutional, mainly because the organic law required that "all Acts of a general nature shall have uniform operation." That Act included the whole State, and as some of the counties might vote license, and others 'no license, the law would not be uniform in operation. There was no such provision in the Constitution of 1850 of Maryland, under which this Act was passed. And Maryland has for a long series of years passed laws prohibiting the sale of liquor in certain places.

The case cited for the appellant from 6 *Barr.*, was afterwards explained by the Supreme Court of Pennsylvania, in 8 *Barr.*, 391, *Commonwealth vs. Judges of Quarter Sessions*, in which latter case the Court say: that "the case in 6 *Barr.*, settled nothing more than that the General Assembly could not delegate to the people power to enact laws by the exercise of the ballot;" and further, expressly say, that "an Act giving to the qualified voters of a township the right to decide by ballot whether the new township should be continued or annulled, is valid and constitutional." We are left thus with the case in 4 *Harrington* as the only one supporting the appellant's theory. And there the Court is clearly at variance with this Court in *Burgess vs. Pue*, 2 *Gill*, 11 and 254, in its construction of the meaning of the word statute; the Delaware Court construing the authority to the people of the

county to decide whether liquor should be sold as a grant or delegation of legislative power, and this Court deciding that the Act of 1825, chap. 162, was simply a grant of power to municipal corporations for the regulation of their municipal affairs, and therefore valid; thus keeping in view the established principle of constitutional law in Maryland, that all inferences and intendments are in favor of the validity of the acts of co-ordinate branches of the Government, and that if an Act of Assembly is capable of two constructions, the Court will give to it the one which brings it within the Constitution. After the decision of the Court in these two cases, made in view of the very able and thoroughly exhaustive argument of the distinguished counsel for the appellee, it is not seen how the validity of such an Act as that now under discussion can be seriously questioned. A careful reading of the opinion cited for the appellant would almost lead to the conclusion that the judges delivering them had become so much enamored with the argument of the learned counsel, that they adopted it *verbatim.* To say that the question of the constitutionality of the Act of 1825, was not before this Court, is to pay a very poor compliment to the argument of the appellee's counsel in that case. In this argument, comprising six pages, 279 to 285, four pages or two-thirds of it, are devoted to a searching review of the constitutional question, and insisting that the 29th and 30th secs., providing that the Act should only be in force in those counties which should adopt the Act at an election, rendered the whole Act unconstitutional. Since that argument, nothing original on this question has been advanced. The subsequent arguments, however distinguished the counsel, have been mere repetitions. And the Court will perceive that the Act of 1825 is much broader, and, therefore, more liable to objection than the Act of 1864.

But it is said the Act of 1864 is a repeal of the license laws of the State. Was not the Act of 1825 a repeal of the old

school laws which vested the whole matter in the Orphans' Courts? We might rest our case safely on the authority of *Burgess vs. Pue*, but the abundance of supporting opinions in other States tempt us to further examination. In *State vs. Clark*, 8 *Foster, N. H.*, 176, the counsel for the defendant argued precisely as the appellant in this case, that the legislature had no right to delegate law-making power to the corporation to repeal the license laws of the State. But the Court thought otherwise, and upheld the action of the corporation. In *State vs. Noyes*, 10 *Foster, N. H.*, 279, the case is still more clearly in point. There the objection was that the submission of the Act to the vote of the people made it unconstitutional, but the Court overruled the objection and sustained the constitutionality of the law. The case of *Commonwealth vs. Judges of Quarter Sessions*, 8 *Barr.*, 391, has already been referred to, and fully sustains our theory of this case, that grants of power to municipal corporations, or the qualified voters thereof, to regulate their municipal or domestic affairs, is valid, being entirely distinct from delegation of the power to make laws. In *Heissembrittle vs. The State*, 2 *McMullen, S. C.*, 233, the Court of Appeals of South Carolina say, the city authorities may by ordinance prohibit the sale of liquor in the city. If the city authorities, who are elected by the people, may do this, why may not the people by their votes do so directly? Clearly they may do so indirectly by electing by their votes city authorities who will prohibit such sale. Will anybody doubt that the legislature might authorize the authorities of North East to prohibit such sale?

In *Wales vs. Belcher*, 3 *Pick.*, 508, the opinion of the Court is flatly contradictory of *Rice vs. Foster*, 4 *Harring-ton*. And it will hardly be said at this day, that the opinion of Chief Justice PARKER, who delivered the decision of the Court, is at all inferior to that of the Delaware judges. Thus we see that in Maryland this case is clearly decided by *Burgess*

*vs. Pue;* in other States, the decisions which are at all applicable, give the weight of authority to our theory of the law.

Again, we contend that the Act of 1864 is no delegation of legislative power, but a mere extension of the license law now in force, which requires persons who desire to take out an ordinary license, to obtain the recommendation of two respectable free-holders. This Act simply provides that no person shall sell liquor in North East, unless he first obtains the assent of a majority of the qualified voters. Formerly no license was issued without a recommendation from the grand jury, and it has never been doubted that either requirement, the two respectable free-holders or the grand jury, was entirely constitutional. If the legislature have the power to prohibit, they have the power to restrict. They have, from the early history of the State, prohibited in certain towns and villages and localities, surely it cannot be doubted that they may place restrictions upon the same.

3rd. The third point is not material to the case, for whether the issue were made by demurrer or motion to quash, sometimes called *concilium*, it would have had the same effect, viz: to raise the question as to the constitutionality of the law.

*Albert Constable,* for the appellant, in reply:

1st. As to the insufficiency of the return. Who were empowered to decide the question of license according to the Act of '64? The "qualified voters." That "the qualified voters" did decide was then a material fact, and should have been alleged. Could we traverse an allegation that would have been supported by proof, that the "majority of forty-six votes" had been cast by minors or women? The appellee asks if it would be necessary to state that "all the jurors were twenty-five years of age," in case the license was withheld by recommendation of the grand jury? It clearly would be

insufficient to state that a jury had made the recommenda-
tion without alleging what jury. And in the case of the
judge suppressing the license, there must be an allegation
that the judge made the order, otherwise the petitioner would
be precluded, though the judge never passed the order. To
show the necessity of alleging material facts, we cited *Mills
vs. Martin,* 19 *Johnson,* 37, *and* 2 *Phillips' Ev.* 157, and
not, as the appellee argues, to show the necessity of alleging
jurisdictional facts in support of judgments of inferior Courts.
For, it was never in the imagination of any but the appellee's
counsel, that judges of election were other than ministerial
officers, (for which *Ashby vs. White, Lord Raymond's Rept's,*
is an authority,) or that their certificate that they had held
an election, with such and such results, estopped all enquiry
as to the validity of the election or the truth of the returns.
As well might it be insisted that an acknowledgment of a
deed before a justice of the peace was a judicial determina-
tion of the validity of the deed or the sufficiency of its execu-
tion. It is true, as the appellee states, that the return shews
an election was called, but it fails to state that it was of
"qualified voters;" or even that it was called in accordance
with the Act of 1864, and it nowhere states that an election
was held of "qualified voters," or in compliance with the
provision of that Act. It does not even state that the elec-
tion was duly held; which latter, according to *Gossett vs.
Howard,* 59 *Eng. C. L. Rep.,* 382, would have been insuffi-
cient. So much for the appellee's objections to the first
point.

The second point goes to the constitutionality of the Act
of 1864 ; and I shall say the less, because the grounds upon
which the Courts of New York, Pennsylvania, Delaware and
Iowa proceeded, are most elaborately explained by those
tribunals. Grants of power to municipal corporations are
admitted in all these cases to be constitutional. But this

was not the case of a grant to the president and commissioners of the village of North East.

The question has never been decided in Maryland. The appellee assumes that this Court decided a similar question in 2 *Gill*, *Burgess vs. Pue*, and that *Burgess* and *Pue* is antagonistic to the unanimous decisions of the highest tribunals of New York, Pennsylvania, Delaware and Iowa. A very slight examination will, I think, shew that there is no antagonism between them. The case of *Burgess vs. Pue*, arose under the school law of 1825. By chapter 162, Acts of that year, the legislature made a law providing for an elaborate system of public schools. It came from the hands of the legislature a complete, positive and absolute law in itself, deriving its authority from the legislature, and not depending for the enactment of its provisions upon any other tribunal, body or persons. By the last two sections (the 29th and 30th,) the legislature submitted this law to the voters of the different counties. "If the majority of voters in any county should be in favor of the establishment of primary schools, as therein provided for, then and in that case the Act should be valid for such county or counties, otherwise of no effect whatever." In *Burgess vs. Pue*, the Court decided this law to be constitutional; and yet, as is apparent, without deciding the submission made to the people by the 29th and 30th sections to be constitutional. For the Court was in no manner called upon, in the case of *Burgess vs. Pue*, to consider these sections. The school law was a complete, positive and absolute law in itself, and though the Court had thought the 29th and 30th sections to be unconstitutional, yet in no way would it have affected the validity of the law itself. These sections, the 29th and 30th, were in the nature of subsequent conditions, which, as Lord COKE says, will not divest an estate previously vested. "In case of a foeffment in fee with a condition subsequent that is impossible, the

estate of the feoffee is absolute; but if the condition precedent be impossible, no estate or interest shall grow thereupon;" and so it is where the condition is illegal. *Coke, Lit.* 206. In *Burgess vs. Pue,* the condition is subsequent, and therefore, according to Lord COKE, can have no effect to annul the law previously enacted. The powers or estate given by the Act of 1825, went into effect or vested on the 1st of June, in that year, and the submission to the people was not until the November following. This is the view taken by the Court in *Geebrick vs. The State,* 5 *Iowa,* where they say the law might have been so framed as to escape a complete overthrow. If, as they say in that case, there had been anything outside the obnoxious submission to stand as the will of the legislature, that much might have stood as law. For a law may be constitutional in part, and unconstitutional in part, and the unconstitutionality of one part may not affect the constitutionality of another. So it is in the school law of 1825. Striking out the objectionable sections and the remainder will stand as the will of the legislature—the law of the land. For the legislature had enacted it; and it could not be because they said afterwards (as they did in sections 29 and 30,) that some other tribunal should pass upon its validity, the law itself would be void. Suppose the submission made by the 29th and 30th sections had been contained in a subsequent Act, passed at a subsequent day, could such Act have affected the first Act, if otherwise constitutional? Here I would call attention to the phraseology of the 29th and 30th sections. It is not said that the Act is to become a law, but merely " it shall be valid." In *Bradley vs. Baxter* and *Thorn vs. Cramer,* 15 *Barb.,* and in *The People ex rel. McSpedden vs. Stout,* 23 *Barb.,* the words of the statute are, "if a majority of the tickets contain an approval of said Act, then the same shall become a law." Thus we see an obvious distinction between *Burgess* and *Pue,* and the cases

v. 25.

cited from New York, Pennsylvania and elsewhere. I come to the conclusion, therefore, that even had the Court of Appeals, in *Burgess vs. Pue*, decided these two sections to be constitutional, it could in no manner have affected our case, since such a decision was not called for in that case; and whatever they might have said would have been mere *dicta* and not binding.

But the Court, in *Burgess vs. Pue*, never pretended to decide the present question, as a reference to the opinion of the Court, on page 19, will shew.

The appellee says, the judges delivering the opinions in the New York, Pennsylvania, Delaware and Iowa cases, seem to have "become enamored" of the argument of the appellee's counsel in *Burgess* and *Pue*; and he might have added that they applied it to cases such as the present, where powers had been granted, in the words of that argument, "without the forms of a municipality or corporation." It will be seen that they carefully distinguish their cases from such as *Burgess* and *Pue*. In *Rice vs. Foster*, 4 *Har.*, 495, the Court draws this distinction very clearly: "To say that the authority given to the school voters (to members of a corporation) to determine whether a tax shall be laid or not is a grant of legislative power, is an abuse of language." So of the other cases cited by the appellant, they are all equally explicit in distinguishing cases like this, under the Act of 1864, from the case of *Burgess vs. Pue* under the Act of 1825. In this view the 29th and 30th sections provided for a vote of assent or dissent by a corporation.

But the appellee's counsel objects that the Act of 1864 "is nothing more nor less than a grant of power to the town or borough of North East to regulate its domestic affairs." The appellee's counsel will scarcely succeed in making it appear that the power granted by the Act of 1864 was to the corporation of North East, since it has been over and over again decided, that a corporation can only take by its corporate name; (see

the authorities collected in *Angell* and *Ames on Corporations*, page 87;) North East is incorporated under the title of "President and Commissioners of the village of North East." From this Act it could not even be discovered that there was such a corporation. The "qualified voters" are not the "President and Commissioners of the village of North East." Who are the "qualified voters" of the borough of North East? All free white male citizens above the age of twenty-one years. Who are the voters qualified according to the laws of the corporation of North East? we have no means of ascertaining. They may be only persons having a property qualification, or over twenty-five years of age. Again, the appellee's counsel objects, that this Act "is perfect and complete in itself, a specific grant of power needing no action of voters to put it in force or complete it, and entirely beyond the possibility of being defeated by any popular vote." This can only be predicated of so much of the law as authorizes an election to be held. But how does this differ from the cases cited for the appellant? There, too, the legislature gave the power to hold the election, and yet, when the election was held and the result known, the offspring were declared bastards. It is the judgment and will of the legislature that is law. If, therefore, the act gives no evidence of legislative will, how can it be a law? Law is the rule of conduct prescribed by legislative power—the results of legislative judgment, and the manifestations of legislative will. This Act of 1864 prescribes no rule, expresses no judgment, manifests no will of the legislature, but leaves it to the judgment and will of the "qualified voters" to decide by ballot, whether any license to sell spirituous or fermented liquors of any kind or description whatever, shall be granted by the clerk of the Circuit Court for Cecil county."

I therefore submit, that the force, both of principle and authority, are with us; and that whatever apparent discrepancy may appear in the cases, will be reconciled by remem-

bering the admitted principle, that grants of the power of taxation are constitutional when made under the "forms of a municipality or corporation."

WEISEL, J., delivered the opinion of this Court.

Vincent Hammond, the appellant, applied, on the 21st day of July, 1864, to the Circuit Court for Cecil county for a *mandamus* to compel the clerk of that Court, the appellee, to issue to him a license to keep an ordinary in the borough of North East, in that county. The Court passed an order on the appellee to show cause by a day named why the writ should not issue. The cause shewn was, that the General Assembly of Maryland, on the 10th day of March, 1864, passed an Act (chap. 348,) entitled, "An Act to regulate the issuing of licenses for the sale of spirituous or fermented liquors within the borough of North East, in Cecil county," which law is set out; that after the day for its going into effect, viz: on the 11th day of April, 1864, at an election called by the commissioners of the borough of North East for the purpose of deciding by ballot, whether a license to sell spirituous or fermented liquors of any kind whatsoever should be granted or issued, by the clerk of the Circuit Court of Cecil county, to any person to vend or sell the same within the limits of said borough, it appeared, by sixty-one ballots to fifteen, that the election was unfavorable to the issuing of said licenses; and that a certificate of said election, signed by the judges and attested by the clerk of said election, was duly made to the respondent as clerk of said Court, and filed in his office. Wherefore, he alleged it was not lawful for him to issue the license to the appellant, and that he properly refused, and continued to refuse, to issue the same, &c. The appellant thereupon moved the Court to quash the return of the respondent, and for a peremptory *mandamus.* The Court overruled the motion, declared the return suffi-

cient cause why the *mandamus* should not issue, discharged the rule and dismissed the petition. From this order this appeal was taken.

The Act of Assembly, set out in the appellee's return, provides, first, that the qualified voters residing in the borough of North East, in Cecil county, shall have the privilege of deciding by ballot, at an election called by the commissioners of said borough for the purpose, on some day in April, 1864, and on some day in the same month, in each subsequent year, whether any license to sell spirituous or fermented liquors, of any kind or description whatsoever, shall be granted or issued, by the clerk of the Circuit Court of Cecil county, to any person to vend or sell the same within the limits of said borough. Secondly, that should a majority of the votes cast at an election held as provided above, be unfavorable to the issuing of said license, it shall not be lawful for the said clerk of the Circuit Court to issue any license for the sale of spirituous or fermented liquors of any kind within the limits of said borough for one year from the first day of May ensuing said decision, in each and every year in which such decision shall be made. The Act to take effect from the date of its passage.

The object of this appeal is to obtain from this Court an opinion and decision upon the constitutionality of this law, in order that those whose interests are affected by it may know whether it is of binding force in regulating their conduct and business. No other purpose could be effected now upon this application for the *mandamus*, the time in which a favorable determination could have availed the petitioner having long since passed, the appeal itself having been taken as late as the 3rd of July, 1865, more than six months after the order appealed from had been passed. Notwithstanding this, we have considered the question of the constitutional validity of the law, and we proceed to state briefly our conclusion upon it.

Hammond vs. Haines.

It does not belong to that class of laws which contain an express provision for referring it to the vote of the people for their acceptance *before it can become a law.* The law as it passed the legislature is complete in itself, requiring no other sanction. We are not, therefore, to pass upon a law which submits to the people, in the largest, broadest sense, the passage of the law, or requires from them legislative action upon it before it can have the force of law.

The objection to the law under consideration is, that it provides for the suspension or repeal, periodically, of an existing State law, by a portion of the people within a prescribed limit, by means of the ballot, at an election called for the purpose. It is not to be overlooked, that the town of North East is an incorporated borough, a municipality with the usual powers to pass by-laws and ordinances for the police regulations of the place, and it will not be questioned that it was competent for the legislature to confer upon it the power to prohibit the sale of ardent spirits within its limits, notwithstanding the general license law of the State. In such case the local law would prevail. 1 *Code, Art.* 1, *sec.* 11. The authority in this case is given to the qualified voters of the borough, at an election called for the purpose by the commissioners of the borough, to declare annually, by ballot, whether any license to sell spirituous or fermented liquors within its limits shall be granted by the clerk of the Circuit Court for the county. If not, the clerk on being so certified, is not to issue any license for the purpose.

This species of legislation has undergone examination and decision in several of the States of this Union, and has called forth some of the ablest expositions of the character and nature of our representative systems of government, and of the legislative power and action of the State, to be found in any of our judicial reports. In Delaware, Pennsylvania, and Iowa, it has been pronounced unconstitutional. *Rice vs. Foster,* 4 *Harrington. Parker vs. Commonwealth,* 6 *Barr.*,

507. *Geebrick vs. The State*, 5 *Iowa*, 491. On the other hand, there are decisions of a contrary character, recognizing the validity of such laws. In Pennsylvania, a distinction was recognized between the law passed upon in 6 *Barr.*, referred to, and a law which authorized the qualified voters of two townships to decide by ballot on the erection of a new township taken from one of them. This law the Supreme Court of Pennsylvania held to be valid; the same judge who pronounced the opinion in *Parker vs. The Commonwealth*, delivering the judgment of the Court in this, and asserting that it was not within the principle settled in the former case. That settled nothing more than that the General Assembly could not delegate to the people a power to enact laws, by the exercise of the ballot, affecting the property and binding the political and social rights of the citizens, but that the erection of a township or the creation of a new district for merely municipal purposes, or convenience in the transaction of the public business, was in no degree similar to the exercise of the law-making power. He assimilated it to the cases of laying out public roads or erecting bridges, which had long been conferred upon subordinate tribunals, without question as to the power of the legislature to do so; and if the Courts could be invested with such power, the people could also primarily be authorised to exercise it. See *Commonwealth vs. Quarter Sessions*, 8 *Barr.*, 395. This decision has been criticised as in conflict with that in 6 *Barr.*; whether justly or not it is unnecessary for us now to examine.

In New Hampshire, similar legislation has been sustained as constitutional; *State vs. Noyes*, 10 *Foster*, 279; though the law in that case was subject to adoption by the people of the counties, and in this respect was similar to the primary school law of Maryland of 1825, ch. 162, and of Pennsylvania of 1836. The distinction which pertains to this species of legislation seems to be well drawn in the case in 6 *Barr.*, 524. It might be still further illustrated by a class of laws

not uncommon and of unquestioned validity, viz., general laws of incorporation, under which parties accepting their terms, or availing themselves of their provisions, may be incorporated without special acts of incorporation.

The case of *Burgess vs. Pue*, 2 *Gill*, 11 & 254, were strongly relied upon by the appellee in the argument of this case as settling the question in this State, and establishing the validity of this law. Those cases arose under the operation of the primary school law above referred to, (1825, ch. 162,) and the provisions of the 29th & 30th sections of that law for submitting it to the votes of the people of the several counties, with a view to its adoption and operation in such as would vote accordingly, were urged in the argument as not warranted by the Constitution, and as avoiding the law. This Court, however, held the law to be constitutional, but not distinctly upon the ground that there was no force in the objection taken to those sections, but that it was competent for the legislature to delegate the power of taxation to the taxable inhabitants for the purpose of raising a fund for the support of the schools. pp. 11, 281 & 285.

We are not, however, without an express adjudication by this Court upon a law substantially similar to the one now under consideration, but which, not being reported, was not cited in the argument of this cause. The General Assembly of Maryland, at its session of 1846, ch. 172, passed an Act declaring that from and after its passage, it should not be. lawful for the clerk of Washington county Court to issue a license to any person or persons to sell ardent spirits within two miles of the College of St. James, in Washington county, without an order in writing from one of the judges of said Court, who was thereby authorized to grant such order if he should be satisfied, from the representations of respectable citizens in the neighborhood of said college, of the necessity and propriety of granting such license.

This law, it is true, contains a section repealing all laws,

Hammond vs. Haines.

or parts of laws, inconsistent with it, but it still left the license law operative within the interdicted limits, provided one of the judges of the county Court, being satisfied of its propriety and necessity, by the representations of respectable citizens in the neighborhood of the college, should give an order to the clerk to issue the license. In this case the representations of respectable citizens of the neighborhood, and an order of the judge thereon, was declared effective to put the law in operation in a prescribed district. In the town of North East, a majority of its qualified voters, speaking through the ballot box, was declared to have the effect of suspending the operation of the law within its limits. The effect was, or is, the same in both, one operating affirmatively, the other negatively; the mode of expressing the assent or dissent only being different. We regard both laws as virtually involving the same principle, and alike obnoxious to the constitutional objection.

A man named Lancaster, living within two miles of the College of St. James, was indicted for selling liquor at his residence, and convicted and fined. His defence was that he had tendered the price of a license to the clerk of Washington county Court who refused to grant it without the order of a judge, as required by the law. Lancaster appealed to the Court of Appeals, and in this Court, by agreement of counsel, the question of the constitutionality of the law of 1846, ch. 172, was submitted to the Court and argued as the only one for its determination. The Court was unanimous in the opinion that the law was constitutional and so adjudged. *Lancaster vs. The State*, decided at December term, 1850, referred to in *Rawlings vs. The State*, 1 *Md. Rep.*, 128.

We think this case decides the law for the town of North East under consideration in this appeal, and that the order of the Court below discharging the rule and dismissing the petition for a mandamus was correct and should be affirmed.

In deciding this law to be constitutional, this Court is not to be understood as embracing within its views the character of a law which would, in a broader or more enlarged sense, submit its passage or existence to the popular vote. "Law, (as has been most aptly defined) is the result of the legitimate action of legislative power." The Constitution wisely distributes the powers of government among several and distinct departments, and the limits of these cannot be extended, or an encroachment of one upon the other permitted, without a violation of the social compact and a derangement of the social order. The General Assembly, composed of the Senate and House of Delegates, is in this State the only law making power. The popular will is not to be disregarded, but that, always in theory and generally in practice, is reflected by the representatives of the people in the legislative department of the government. With them is lodged the power of making laws for the government of the people, and the due responsibility of the representative to his constituents is best maintained, and stable and wholesome legislation secured, by avoiding judicial refinements by which this power is extended to any whom the Constitution has not invested with legislative action.

*Order affirmed.*

(Decided July 19th, 1866.)