(Decided 16th July, 1879.)

---

THE MAYOR AND CITY COUNCIL OF BALTIMORE *vs.* DANIEL STOLL.

*Validity of the Act of 1878, ch. 159, considered, with reference to the Sufficiency of its Title, and its Interference with the rights of Navigation—Question whether the Levy by the City of Baltimore of a sum to pay for the Bridge therein provided for, was Mandatory or Directory only—Case of Mandamus prematurely brought.*

The title of the Act of 1878, ch. 159, is "An Act to repeal ch. 220 of the Acts of 1876, entitled an Act to. establish a free bridge over the Patapsco river at or near the present site of Light street Bridge, * * * and to enact the following in lieu thereof." By this Act the Mayor and City Council of Baltimore, and the County Commissioners of Anne Arundel County, are "authorized, empowered and directed" to purchase the present bridge over the Patapsco river, known as Light street Bridge, and keep the same as a free bridge, if the owners will on or before the first day of January, 1879, agree to sell the same unto the said Mayor and City Council of Baltimore, and the County Commissioners of Anne Arundel County, at a price and upon such terms as to them may appear fair and reasonable. The Act further authorizes, empowers and directs them, if they cannot buy the said bridge to build a free bridge over said river, provided the whole cost "shall not exceed in the aggregate the sum of forty thousand dollars;" and provides for a keeper for opening and closing the draw, but makes no provision respecting the size or extent of the draw. By the 4th sec. the said Mayor and City Council, and the County Commissioners of Anne

Arundel County are "authorized and directed," to levy on the assessable property of the city and county respectively, "at such time or times as they may deem best, such sums of money as may be necessary to carry out and secure the provisions of this Act, the expense thereof to be borne equally by said city and county, a portion thereof at least to be levied at their regular annual levy for the present year." On a mandamus filed in September, 1878, asking that said Mayor and City Council " may be compelled to levy a portion of the costs of carrying out the provisions of said Act, in accordance with the provisions of the said Act," it was HELD:

1st. That the title of said Act was not defective under sec. 29 of Art. 3 of the Constitution.

2nd. That the direction as to the time within which or at which the first portion of the levy was to be made, was so far directory only that the defendant was not under compulsion to levy until after the exhaustion of efforts to buy within the period mentioned, and it was known whether it could buy or build within the sum designated by the Act.

3rd. That the proceeding was premature, and no mandamus should be awarded until it should appear, after the first day of January, 1879, that the defendant was wilfully disregarding the requirements of the Act of Assembly.

4th. That although the Act of Assembly, while it provides for a draw to the bridge, does not designate its size, it will not be held to have intended the construction of a bridge without a sufficient draw for the conveniences of navigation; and the said Act cannot be held void because of its interference with the rights of navigation.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and IRVING, J.

*James L. McLane, City Counsellor,* and *S. Teackle Wallis,* for the appellant.

*Isidor Rayner* and *T. A. Linthicum*, for the appellee.

IRVING, J., delivered the opinion of the Court.

This is an appeal from a *pro forma* order of the Superior Court of Baltimore City, directing a mandamus to issue against the appellant to compel the performance of certain supposed duties under the Act of 1878, ch. 159. The title of the Act is, "An Act to repeal ch. 220 of the Acts of 1876, entitled an Act to establish a free bridge over the Patapsco river, at or near the present site of Light street bridge, * * * and to enact the following in lieu thereof: " By the first section of the Act, the Mayor and City Council of Baltimore and the County Commissioners of Anne Arundel County are "authorized, empowered and directed" to purchase the bridge over the Patapsco river, known as "Light street bridge," and to keep the same as a free bridge, if the owners will, on or before the first day of January, 1879, agree to sell the same unto the said Mayor and City Council of Baltimore, and the County Commissioners of Anne Arundel County, at a price, and on such terms and conditions as to them may appear fair and reasonable. By the second section they are "authorized, empowered and directed," if they cannot buy the said bridge, to build a free bridge over said river, from some suitable point on the Anne Arundel shore to some convenient and practicable point in Baltimore City; and provides for the condemnation or purchase of necessary lands and material for its construction ; provided the whole cost " shall not exceed in the aggregate the sum of forty thousand dollars." The third section provides for a keeper for opening and closing the draw, but makes no provision respecting the size or extent of the draw. By the fourth section the said Mayor and City Council, and the County Commissioners of Anne Arundel are "authorized and directed " to levy on the assessable property of the city and county respectively " at such time or times as they may

deem best, such sums of money as may be necessary to carry out and secure the provisions of this Act, the expense thereof to be borne equally by said city and county, a portion thereof at least to be levied at their regular annual levy for the present year." The fifth section provides for maintaining the bridge when purchased or built. The special prayer of the petition for *mandamus* is that the Mayor and City Council of Baltimore may be compelled to levy a portion of the costs of carrying out the provisions of said Act in accordance with the provisions of the said Act. The appellants by their answer set up that the Act is invalid, because its title is defective under the Constitution of the State, and also because it is invasive of the public rights of navigation. They also claim that the section of the Act sought to be enforced by *mandamus* is directory only, and not mandatory in its character. They admit that when the *mandamus* was issued, the annual levy had been made, and was in process of collection; and that it included no levy for the purposes of said Act. The appellee demurred, and the demurrer being sustained, and the order for the *mandamus* having passed, an appeal was taken to this Court. The only question before us, therefore is, was the *mandamus* properly ordered? or should the demurrer have been overruled?

This Court has so often passed upon the question involved in the appellant's objection to the said Act of 1878, by reason of infirmity of title under section 29, Art. 3, of the State Constitution, that it is unnecessary to say more than that the objection is fully covered by the decision of the Court in the case of the *County Commissioners of Talbot County vs. The County Commissioners of Queen Anne's County,* 50 *Md.,* 245. The title of the Act therein decided upon, and the one herein considered, are so nearly identical in form, that it is impossible to see good reason for holding this one unconstitutional and that one free from objection.

The only thing the petition for the mandamus prays for, is to compel the respondents to levy some portion of the cost of the contemplated work or purchase, at their annual levy for 1878. The prayer is to compel something to be done which, when the petition was filed, could not be done at the time, and in the manner prescribed by the Act, if the Act, in that respect, is to be regarded as compulsory; for it is conceded in the pleadings that the levy was made and taxes sent out for collection. The appellants insist that the Act, in that particular, is not mandatory, but directory only, and so regarding it, no levy was made in 1878.

A discretion to some extent was confided in the appellants in other parts of the Act, so that it could not be regarded as wholly mandatory without any qualification. They were not to buy the existing bridge unless they and the owners could agree, and the owners would accept a price which they *thought reasonable.* Failing to buy the existing bridge, they were to build a new one, to cost not more than forty thousand dollars. Whether one could be built for that sum was a fact to be ascertained by them, and their action was to be restrained, of course, if the work could not be done for that sum. In the section prescribing a levy, their discretion as to time, &c., is expressly provided for, and the suggestion made that a *portion* of the cost is to be levied at their first levy. We call it a suggestion, because, looking at the whole law, we do not think the Legislature could have intended it to be more than directory. The proportion of cost is left entirely with the appellants—a *portion only* is named. If that provision was mandatory, the contingencies, which might render the levy wholly useless, could not modify their duty in the premises, whereas if it was directory merely, it would be competent for the appellants to be governed by the circumstances. This view is strengthened by the fact that the appellants and the owners of the bridge were allowed till January 1st, 1879, for their negotiations. The bridge

was to be bought if it could be purchased for a price, in the appellants' judgment, reasonable and fair; and they were allowed till that time to ascertain if it could be done. Until that time came it could not be known what amount would be wanted, or if any would be wanted, if the forty thousand dollars had been found insufficient for building a new bridge. The whole provisions of the law must be construed together. The language employed must be construed with reference to the subject legislated on, and object to be secured. One provision must be construed by another according as the one or the other is the chief object to be attained. The section we are considering only provided for raising the means for carrying out the main object, viz., the buying the old or the building a new bridge for a specified sum. If the specified sum would not do either, no levy was needful. If there were contingencies, therefore, which might make the main object impossible of attainment, it is reasonable to suppose the Legislature did not mean, in that event, any levy should be made. Such possibility throws light on what ought to be the construction of the directions given. We think therefore the provision in controversy was only directory, and not mandatory. It was supposed, no doubt, that all the information necessary, and all negotiations for the purchase would be had before the time for the levy came, and therefore the language giving rise to this controversy was used— "In respect to the time within which a duty prescribed by a statute is directed to be performed, Courts have adopted as a general rule of construction, that the *time* is to be regarded as directory merely, unless, from the nature of the act to be performed, or the language employed in the statute, it plainly appears that the designation of time was intended as a limitation of power of the officer." *Webster's Appeal,* 29 *Md.,* 522. From what we have already said it is clear that we do not think the nature of the act to be performed indicates a limitation of power of the ap-

Mayor, &c. of Balto. *vs.* Stoll.

pellants. We therefore think that the direction as to the time within which or at which the first portion of the levy was to be made, was so far directory only, that the appellants were not under compulsion to levy until after the exhaustion of efforts to buy within the period mentioned, and it was known whether they could buy or build within the sum designated by the Act. In other words, we think this proceeding was premature, and that mandamus should not have been awarded until it should appear, after the first day of January, 1879, that the appellants were wilfully disregarding the requirements of the Act of Assembly. Notwithstanding the demurrer admits that a bridge will interfere with navigation at that place, it does not follow that the Act of Assembly has authorized the construction of such a bridge as would so interfere with navigation as not to be lawful. It is true the Act does not designate the size of the draw, but it provides for a draw; and it will not be held to have intended the construction of a bridge without sufficient draw for the convenience of navigation, By previous legislation respecting the existing bridge mentioned in the Act under consideration, the Legislature has indicated its judgment respecting the needs of the public in that regard, and its directions in that particular would form a good criterion for the appellants in executing the provisions of this Act. When an Act is not necessarily void on its face, all intendments will be made to support it. We cannot therefore declare this Act void, as we are asked to do, because of its interference with the rights of navigation. In our view it does not necessarily authorize the obstruction of navigation. But for the reasons already indicated, we think there was error in granting the mandamus when prayed for, and the order will be reversed.

*Order reversed, with costs.*

(Decided 16th July, 1879.)