(Decided 29th May, 1884.)

ANDREW F. SLYMER *vs.* THE STATE OF MARYLAND.

*Indictment under the Act of 1882, ch. 92, known as the Local Option Law for Harford County—"Of the County" and "for the County"—Sec. 29, of Art. 3, of the Constitution, requiring the subject of an Act of Assembly to be described in its Title—Judicial notice of Public Local Laws.*

In an indictment under the Act of 1882, ch. 92, known as the Local Option Law for Harford County, it is sufficient to charge that the accused did unlawfully sell or give away a certain quantity of spirituous liquor, " contrary to the form of the Act of Assembly in such case made and provided."

In an indictment under the Act of 1882, ch. 92, it is not necessary to allege that said law became operative through the observance of all the formalities prescribed therein as precedent to its going into effect.

The words " of the County " and "for the County," as applied to the Circuit Courts and to the clerks thereof, are used interchangeably and with like propriety.

The subject of the Act of 1882, ch. 92, entitled, " An Act to enable the qualified voters of Harford County to determine by ballot whether intoxicating liquors, or alcoholic bitters shall be sold therein," is sufficiently described in its title; and the law is valid within the provision of section 29, of Article 3, of the Constitution.

It is the duty of the Courts to take judicial cognizance of public local laws, within the sphere of their operation, equally with public general laws.

APPEAL as upon Writ of Error from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

The cause was submitted on briefs to ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*Andrew F. Slymer, in propria persona.*

*Charles B. Roberts, Attorney-General,* for the State.

IRVING, J., delivered the opinion of the Court.

The appellant was indicted in the Circuit Court for Harford County, for violating the Act of Assembly of 1882, chapter 92, known as the "Local option law" for Harford County. The indictment contains six counts, each concluding "contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State." The first count charges the sale of whiskey to one David H. German; the second the sale of brandy to the same man; the third and fourth counts repeat these charges, with the allegation that the traverser was not a druggist, and did not have a *bona fide* prescription of a physician for the same. The fifth and sixth counts charge the giving away of the liquor without negativing the exceptions made in the sixth section of the statute, as was done in the third and fourth counts.

To this indictment a general demurrer was interposed, which having been overruled, a special demurrer was filed. This also having been overruled, the traverser was tried, convicted and fined; thereupon he has brought the case to this Court by writ of error.

The grounds of error which are assigned are in substance as follows:

Slymer *vs.* State.

1. That it did not appear from any allegation in the indictment that the Act of 1882, chapter 92, had become a law applicable to Harford County.

2. That it was not alleged in the indictment that the law had ever been voted upon, and that the judges of election had ever made any return, and that the result had been proclaimed.

3. That it was necessary for the indictment to state affirmatively that every condition precedent to the law taking effect had been complied with.

4. That there was no statute forbidding the sale as charged in the indictment.

The Constitution of the United States guarantees in criminal prosecutions the accused shall enjoy the right to be informed of the nature and cause of the accusation, and so does the Bill of Rights of this State. Lord DENMAN says, that the first principles of the law require that such charge be so preferred as to enable the Court to see that the facts amount to a violation of law, and the prisoner to understand what it is he is to answer and disprove. *Forsyth's Cases and Opinions on Constitutional Law,* 457 and 458; 2 *Hawkins' Pleas of the Crown, ch.* 25, *secs.* 57 and 60.

It is the offence which is charged, that is, the act done, which is to be described in the indictment, and not the law which is alleged to be violated. Ignorance of the law is no excuse for its violation, by all authority, and the reason is, that every one is presumed to know what it is. This indictment concluded "contrary to the form of the Act of Assembly in such case made and provided," and that would seem to be all that was necessary in such case. *Hale* in his *Pleas of the Crown, vol.* 2, *page* 192, says the indictment need not set out the statute, unless it be a private statute, whereof the Court cannot take notice. The same law is laid down by *Hawkins' Pleas of the Crown, ch.* 25, *secs.* 100 and 101; and in 1 *Chitty's Criminal Law, pp.* 276–

281, the same doctrine is maintained. In *Bishop on Statutory Crimes*, one of the latest publications upon criminal law, this statement is made: "It has been perfectly settled that there is no necessity, in any indictment on a *public* statute to recite the statute upon which it is founded; for the Judges are bound *ex officio* to take notice of all public Acts of Parliament, and where there are more than one by which the proceeding can be maintained, they will refer it to that which is most for the public advantage." *Bishop* adds that if recital be attempted, variance may vitiate, and therefore it is always advisable not to recite. *Bishop on Statutory Crim.*, *sec.* 395. Courts are created to administer and enforce the law; therefore they do and must take judicial cognizance of all public laws. Whether the law has existence is for them to say, just as fully as it rests with them to say whether the indictment is good or bad, or that the evidence to prove the offence alleged is legally admissible or otherwise. To the Courts alone belong the right of saying whether a statute has been constitutionally and legally enacted. *Legg vs. The Mayor, &c. of Annapolis*, 42 *Md.*, 219; *Hamilton vs. State, ex rel. Wells and Hardesty*, 61 *Md.*, 14. Ordinarily our laws require nothing more than passage by the two Houses of the Legislature and the signature of the Governor, accompanied with the great seal of the State, affixed in the presence of certain designated officers of the Legislature, to make them operative. But the law under which this prosecution is made, after passage by the Legislature and approval in the method mentioned, required submission to the people of Harford County at a regular election, for their acceptance before it should become operative. And it is the omission to state in the indictment, that it became operative through the observance of all the formalities prescribed in the law, which is the ground of demurrer.

It was decided by this Court in *Hammond vs. Haines*, 25 *Md.*, 558, *Fell vs. State*, 42 *Md.*, 71, and in *Crouse vs.*

Slymer *vs.* State.

*State*, 57 *Md.*, 328, that a law like the one now involved became a valid law of the State so soon as it received the approval of the Governor in constitutional form, notwithstanding its operation was deferred till a future time, and was made entirely dependent upon the acceptance of the same by a majority of the ballots of voters at an election held for the purpose of ascertaining their will. In the same case it was decided that the certificate of the judges of election and the proclamation of the clerk were conclusive that the law had been accepted by the people, and had become effectual as a law; and that as no mode of contesting the validity of such election had been provided by law, no evidence was admissible to the jury to controvert the result of the election duly certified and regularly proclaimed. There would seem to be no propriety or use in inserting in an indictment facts which the prisoner cannot controvert, under his plea of not guilty, before the jury if he elects to be so tried. As the Court pronounces on the sufficiency or insufficiency of the evidence to establish the bringing of the law into operation, it is evident, that whether the law has operative existence or not is a preliminary question for the Court, and the evidence offered is really evidence to the Court on which it pronounces and not the jury. If it were otherwise, as is said in *Crouse's Case*, we might have the anomalous state of things of one jury finding the law operative and the traverser guilty; and another jury finding the law had not been adopted, and for that reason acquitting the accused. Reason and necessity alike require stability in the law. For like reason, therefore, when the Court has once, upon the proofs, found the law to have been adopted, and operative, and that decision stands unreversed by this Court, no further proof should be required in any case, but that question should be held decided and all Judges should take judicial notice thereof.

16        v. 62.

No distinction can be taken in respect to the duty of the Court as to taking judicial cognizance of Public General Laws, and Public Local Laws. Both are general and uniform within the sphere of their operation; and within the section, at least, where Public Local Laws do prevail and operate, the Courts must take judicial notice of them.

But it is argued that because the Court does, and will take judicial notice of the law as one providing for an election to be held, the Court must know that the law provides for the return of the election to be made to the "clerk of the Circuit Court *of* Harford County," (instead of "*for* Harford County,") and the Court must judicially know there is no such officer, therefore the indictment is void because there can be no such return as the law provides for, and the law can have no existence. To this we cannot accede. It is hypercritical, and common sense and the habitual use of the words "of" and "for" as synonymous in that connection forbids any such holding as that contended for. It is perfectly clear to whom the certificates of the judges of election were to be sent, and the Court cannot frustrate that intent, and decide that the law has failed to become operative, because of such supposed impossibility of executing its provisions. In the very same law, in the seventh section, the Court, before which offences against the law are to be tried, is described as the Circuit Court "of the county." It is true the Circuit Courts are called in the Constitution creating them, " Circuit Courts for the counties." But in the same Constitution, Art. 4, section 11, they are spoken of as " Circuit Courts *of* the counties;" and this too in a section providing for the returns of election to be made to them. Throughout the Code and Acts of Assembly, the Circuit Courts for the several counties, are spoken of sometimes as "*of* the counties," and sometimes as "*for* the counties." We note a few of the instances where the clerks are spoken of as "clerks *of* the Circuit Courts *of* the county:" In the provision for the registration

of births and marriages, 1868, ch. 130, sec. 1; in the provision for registration of voters 1867, ch. 336, and 1874, ch. 490, and 1876, ch. 249. In Art. 75, sec. 144, as amended by 1878, ch. 475, with respect to *fi. fas.* from one county to another, an execution, issued from the Court of one county to be levied and served in another county, is made returnable to the " Circuit Court of the county" to which it is sent. Justices of the peace vacating their offices are required to take their dockets to and deposit them with the " Clerk of the Circuit Court of the county" in which they may respectively reside; and neglect to do so is made a misdemeanor punishable by fine and imprisonment. Act of 1864, ch. 179, amending Art. 51, section 9, of the Code. Appeals from justices of the peace, by 1872, chapter 182, amending section 51 of Article 5 of the Code, are to be made to the "Circuit Court *of* the county." We forbear extending this opinion by the mention of other like instances of the interchangeable use of the words "*of* the county" and "*for* the county" as applied to the Circuit Courts and the clerks thereof. We have found it difficult to treat this objection seriously, as it is so obviously untenable. The authorities cited do not sustain the contention.

The fourth ground of error is so vaguely stated that we would be justified by the case of *State vs. Scarborough,* 55 *Md.,* 348, in holding it too vague for notice; but supposing it to have been intended to raise the question which is presented in the third special plea of the traverser in the record, viz., that the law is invalid because the title is not constitutionally sufficient, we will briefly and simply say, that in view of the frequent decisions in this Court upon the scope and meaning of section 29, of Article 3, of the Constitution, we see no ground for holding the Act in question infirm on account of its title. The provisions found in the Act of 1882, chapter 92, might most naturally be expected from the title given the

Act. *County Comm'rs of Dorchester County vs. Meekins,* 50 *Md.,* 28; *County Comm'rs of Prince George's County vs. Comm'rs of Laurel,* 51 *Md.,* 460; *Mayor, &c., of Baltimore vs. Stoll,* 52 *Md.,* 435. Finding no error we must affirm the judgment.

