Fell *vs.* State.

(Decided 11th March, 1875 )

WILLIAM FELL *vs.* THE STATE OF MARYLAND.

*Constitutionality of Local Option Laws : Act of* 1874, *ch.* 453— *Acts of Assembly to be declared Invalid only for the most con- clusive reasons—Legislative power—Nature of a License to sell liquor.*

Section one of the Act of 1874, ch. 453, provided for an election to be held on the second Tuesday in July, 1874, at which the voters of the several election districts in the counties named, should cast ballots "for the sale of spirituous or fermented liquors" or "against the sale of spirituous or fermented liquors;" and directed the judges of election should make return of the votes to the Judges of the Circuit Court, who should make proclamation of the result. Section two, enacted that if it should be found by the returns of the judges of election, and proclamation of the Judges of the Circuit

Court, that a majority of the votes, in any district of either of the said counties  * * * * had been cast against the sale of spirituous or fermented liquors, that then it should not be lawful for any person or persons, or body corporate to sell spirituous or fermented liquors, in any district of either of said counties, voting by a majority against selling the same. Section three prescribed the penalty for a violation of the Act; and section four provided that the Act should take effect, immediately after it should have been determined by a majority of the people in any one or more election districts of the counties named, whether or not spirituous or fermented liquors should not be sold, as before provided for. HELD:

That this Act was constitutional and valid; its going into effect and becoming operative, being made to depend upon the result of a popular vote, was not a delegation of legislative power to the people.

Every intendment should be made in support of a legislative enactment; and it should not be declared invalid except for the plainest and most conclusive reasons.

The Legislature has the undoubted power to prohibit the sale of spirituous or fermented liquors in any part of the State, notwithstanding a party to be affected by the law, may have procured a license, under the general license laws of the State, which has not yet expired. Such a license is in no sense a contract made by the State with the party holding the license. It is a mere permit, subject to be modified or annulled at the pleasure of the Legislature, who have the power to change or repeal the law under which the license was granted.

APPEAL from the Circuit Court for Caroline County.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*Phil. H. Tuck, J. W. Bryant, John B. Brown* and *Will. H. Tuck,* for the appellant.

The Act of 1874, ch. 453, is null and void, being in violation of the Constitution.

1. Laws of this kind have been passed upon in several of the States, and although in some instances they have

been sustained, the Courts have concurred in the follow-
ing principles, to wit: that legislation cannot be exercised
directly by the people; that legislative power cannot be
delegated, but must be exercised by the functionaries and
in the mode designated by the Constitution; and that a law
enacted in any other manner is void. Hence, the inquiry
has been, whether, according to the terms in which the
sense of the people was proposed to be taken, there was a
delegation of legislative power to them; in other words,
whether the Act as it emanated from the Legislature was a
perfect and effective law, or required for efficacy the sanc-
tion of the people. If of the latter character they have
been, without exception, declared to be void. *Rice vs.
Foster*, 4 *Harr.*, 479; *Parker vs. Commonwealth*, 6 *Penna.*,
507; *Thorne vs. Cramer*, 15 *Barb.*, 112; *Bradley vs. Bax-
ter*, 15 *Barb.*, 122; *Barto vs. Himrod*, 4 *Selden*, 490; *Sauto
vs. State*, 2 *Iowa*, 165; *Geebrick vs. State*, 5 *Iowa*, 491;
*State vs. Beneke*, 9 *Iowa*, 203; *State vs. Weir*, 33 *Iowa*,
134; *Maize vs. State*, 4 *Ind.*, 342; *Meshmcier vs. State*, 11
*Ind.*, 482; *State vs. Swisher*, 17 *Texas*, 441; *City of Pat-
terson, &c.*, 4 *Zabiskie*, 392; *State vs. Copeland*, 3 *Rhode
Island*, 33; *Railroad Co. vs. Clinton County*, 1 *Ohio S. R.*,
77 *to* 90; *People vs. Collins*, 3 *Mich.*, 343; *State vs. Par-
ker*, 26 *Vermont*, 356; *Ex parte Wall*, 48 *Cal.*, 279;
*Sedgwick's Const. Law*, 164; *Cooley on Const. Lim.*,
116, 117.

2. By our Constitution legislative power is conferred upon
the General Assembly, composed of a Senate and a House
of Delegates. This is the only law-making department
known to the Constitution, subject to the veto power, and
the provisions on the subject are imperative both as to the
authority and the manner of its exercise in passing laws.
*Constitution of Maryland, Art. III., Secs.* 1, 14, 28, 29,
30, 31.

Limitations upon this power are declared in certain
cases where the people, speaking through the convention,

reserved to themselves a participation in the legislative function.  *Art.* 11, *Sec.* 7 ; *Art.* 13 ; *Art.* 14.

3. This Act is a delegation of legislative power to portions of the people of the counties named.   Every act to have the force of law should express the judgment and will of the Legislature, and be a perfect operative law when duly passed by the two Houses, and approved by the Governor. This Act was not a complete declaration of the mind and will of the law-makers ; it had no validity when recorded in the Court of Appeals, except as authority for holding elections.   It was to take effect, not immediately after its passage, or on the 1st June, according to the Constitution, but "immediately after it shall have been *determined* by a majority of the people, whether or not liquor should not be sold as before provided for."   The people were to *determine* whether or not any person should sell, and if it appeared that a majority in any district was cast against selling, *then it was to be unlawful to sell.*  (*Sec.* 2.)

The members of the Legislature did not *will* that the Act should have the force of law ; it was left by them to the people to *determine* for themselves whether it should ever have any effect.   The only thing determined by the Legislature was, that there might be an election, and that persons should be punished or not, according to the judgment of the people as shewn by the result of the election. If there had been no election, or if a majority had been the other way, there would have been no effective law, because there would have been no determination of the question as to the right to sell, and no punishment for selling, for there could have been no offenders.   *Bradley vs. Baxter,* 15 *Barb.*, 122 ; *Thorne vs. Cramer,* 15 *Barb.*, 112; 114 ; *Barto vs. Himrod,* 4 *Selden,* 486; 489, 496 ; *Rice vs. Foster;* 4 *Harr.*, 479 ; *Parker vs. Commonwealth,* 6 *Penna.*, 507.

This Act does not, as in some of the cases quoted, establish a license system for the State with penalties for selling

without license, and making the issue of a license depend on a vote of the people, (even supposing that such a law would be valid,) but without any repeal by the Legislature of the existing license laws, it declares that the people shall determine in effect whether there shall be any licenses issued, and also whether any person—including, of course, those who hold licenses—shall sell, and according to their determination, the seller is or is not to be punished.

The revenue laws, prescribing how licenses might be obtained, were in force in that county on the second Tuesday of July—the day of election. On that day the appellant was selling without violating any law of the State. The next day it became unlawful for him to sell, not by reason of any determination or will that the Legislature had expressed, but because the people of his district had voted that no one should sell. This was nothing less than a repeal by a vote of a small portion of the people, of the license system, which the representatives of all the people had established, and under which the appellant had purchased a privilege which those who conferred it, alone ought to have power to take away. *Railroad Co. vs. Clinton County*, 1 *Ohio S. R.*, 90; *Geebrick vs. State*, 5 *Iowa*, 491; *Rice vs. Foster*, 4 *Harr.*, 491.

It is not denied that statutes may be conditional; that their taking effect is sometimes made to depend on a subsequent event. But the event must be one that will produce such a change of circumstances, affecting the expediency of passing the law, that the Legislature can, in advance, see and be able to declare, as matter for their own judgment, that it will be expedient and proper that the Act shall take effect on the occurrence of the event. Here the expediency of passing the law is to be determined in another manner, and the event on which it is to have effect, is nothing less than a determination by others of the identical matter which it was the province of the Legislature to have decided. It was a mere shifting of duty and

responsibility, for it is impossible to say that the Legislature would have passed a law prohibiting the sale of liquor in any one district of Caroline, or of any other county. *Bradley vs. Baxter,* 15 *Barb.,* 123 ; *Mayor, &c. of Balt. vs. Clunet,* 23 *Md.,* 468, 470 ; *N. C. R. R. vs. Mayor, &c.,* 21 *Md.,* 93 ; *Mayor, &c. vs. Kirkley,* 29 *Md.,* 85 ; *Barto vs. Himrod,* 4 *Selden,* 490, 495 ; *Ex parte Wall,* 48 *Cal.,* 279 ; *Cooley on Const'l Lim.,* 121 ; *Sauto vs. State,* 2 *Iowa,* 203 ; *People vs. Collins,* 3 *Mich.,* 378 ; *Parker vs. Commonwealth,* 6 *Penn.,* 525.

4. There is a class of cases in the books in which Acts have been submitted to the action of towns or townships, or municipal corporations, and held to be valid ; but this Act does not belong to that class.

County affairs in this State are managed by Commissioners, who bear no resemblance to the local authorities in some of the other States, and, if, a parallel could be drawn between towns and townships and our counties, surely election districts are not entitled to the same consideration. One of the anomalies of this law is, that while the people in four districts of Caroline County are expected to live abstemiously, the inhabitants of the other are under no such restraint.

The right of the people in towns and townships to vote on such questions, is based, in some of the cases, on the idea that they are *quasi* corporations, and may be well authorized to regulate their police affairs ; but our election districts are in no sense corporations. *Commonwealth vs. Bennett,* 108 *Mass.,* 27 ; *Commonwealth vs. Dean,* 110 *Mass.,* 359 ; *Bancroft vs. Dumas,* 21 *Vert.,* 464. In this last case, the law was sustained as being perfect and operative without the vote of the town.

5. In some of the cases such laws have been sustained in part, and condemned in part, because of the clause submitting them to a vote of the people, if it appeared that the laws were perfect and operative without popular approval.

*Sauto vs. State*, 2 *Iowa*, 165 ; *Maize vs. State*, 4 *Ind.*, 342.
But this distinction cannot apply here, for there would
have been nothing for the law to operate upon if the elec-
tion had not been held, or if the vote had been the other
way. The provisions are so dependent, one on the other,
that the Act is not divisible, but good or bad *in toto*. *State
vs. Swisher*, 17 *Texas*, 441 ; *Geebrick vs. State*, 5 *Iowa*, 498 ;
*Sauto vs. State*, 2 *Iowa*, 165 ; *Cooley on Const. Lim.*, 177,
178, 179.

6. Does this Act shew that the Legislature intended to
interfere with licenses issued and in force at the time the
election took place ?

The people did not vote on the question whether licenses
should be granted. The first section declares that the
question "whether or not any person may be licensed, by
whom spirituous or fermented liquors may be sold, shall
be submitted, &c., &c.," and then the same section pro-
vides for taking a vote for or against selling. Thus while
the Act appears to have intended that one question should
be submitted to the people, they actually voted upon
another. If there is any doubt as to the intent of the
Legislature ; if the supposed intent is not clearly expressed,
or cannot be plainly gathered from the whole Act, the
Court will not wrest the meaning of words so as to take
away the rights of the citizen vested at the time the Act
was passed or took effect.

If the Legislature intended that the people should vote
upon the question of granting licenses after the ascertain-
ment of the popular will, so as to prevent selling thereafter
under such licenses ; or that a majority vote against selling
should have the effect of preventing any from being issued
after that time, the existing licenses could not be interfered
with, and the judgment was wrong. This interpretation
seems to be in accordance with the reason and justice of
the case, for the Legislature must be presumed to have
known that licenses would expire and others issued on the

1st May, and that prohibiting the sale of liquors after the second Tuesday in July, would take away the privilege conferred by the licenses issued between 1st May and the day of election. Legislative expression should be very plain and explicit to perpetrate such a wrong·upon the citizen, while pursuing a business protected by the then existing general laws of the State. An examination of the authorities will show that the subject has been fully considered by the Courts of several of the States, and that the preponderance in number and force of reasoning is against the validity of such laws as that now under review.

*Attorney General Syester, William Daniel* and *George M. Russum,* for the appellee.

It is said that the Act of 1874, ch. 453, was not a perfect law when it emanated from the Legislature, but that it delegated to the people legislative functions, and is therefore unconstitutional and void. . Courts will not pronounce·a statute unconstitutional, unless it is plainly and undoubtedly a violation of the Constitution. All presumptions are in favor of the law, and to *doubt at all,* is to resolve the case in favor of the statute.

The Act ·of 1864, ch. 348, presented to the Court in *Hammond vs. Haines,* 25 *Md.,* 541, the same .questions that arise here; the validity of that statute was sustained. And a comparison of the two statutes will show that there is no essential difference, no substantial distinction between them. The Act of 1864, submitted to the vote of the people, the single question, "whether any license to sell spirituous or fermented liquors shall be granted?"

Under the Act of 1874, there is but one thing submitted to the vote of the people. Like the Act of 1864, the first section of the Act of 1874 submits the question, whether there may be a license to any person or persons, or any house, by whom or wherein spirituous or fermented liquors

are sold. " Whether any person or persons, or house," " by whom or in which liquor is sold may be licensed" is the language. Nothing else is before them. They determine the question submitted, at a special election by voting ballots, with the words " for the sale of spirituous or fermented liquors," or against such sale, on them. If a majority of the ballots are against the sale, then there is a majority against the license. And in that event, on that contingency here, as in 1864, the law steps in and declares all the consequences without regard to whether the people approve or disapprove of these consequences.

It is true that these consequences may determine one way or the other the judgment of the people. But the people do not, in any sense, pass upon the consequences. The fitness of the results that follow the vote, and the expediency of the rules of conduct that become binding and operative, are subjects with which the people have no more to do here than under the Act of 1864.

The most that can be said of this Act, in the way of delegation of power, is, that the Legislature has delegated a power to the people, to ascertain a fact, or determine the existence of a state of things, (public sentiment, if you please,) upon which the law makes its own action to depend. And this is not a legislative function. The existence of this fact or state of sentiment, is by the Act itself " declared to be effective, to put the law in operation" in the designated districts, just as the Court understood the provisions of the Act of 1864.

The people have nothing to say or do with the punishment inflicted for violation of the law. They are not allowed to say whether a fine shall be imposed, or if imposed, how much. They pass no judgment, and have no discretion whatever as to the character or extent of the punishment; prescribe no rules for the government of themselves or others; decree no results; ordain no consequences; sanction nothing; accept nothing; reject nothing. Nothing of this character is referred to them.

It is true they vote whether "license may issue" or not. But for what purpose? Not to determine how the trade in liquors shall be carried on; neither to say whether a man shall be punished for trafficking in them; but simply to ascertain whether a proper occasion exists for the law to go into operation. This the people may lawfully do. Legislatures can, and constantly do delegate a discretion to some other body or instrumentality, to determine the expediency of a law. They frequently delegate to the people of a particular locality, the discretion to say whether a proper occasion exists for the operation of a law; or an appropriate event occurs for the enforcement of it. But these are, in no sense, legislative powers. *Moses vs. Reading,* 9 *Harris,* (*Penn.,*) 188; *Locke's Appeal,* 72 *Penn.,* 491; *Parker vs. State,* 26 *Vermt.,* 357; *Bancroft vs. Dumas,* 21 *Vermt.,* 456.

It seems to be clear, also, that here the people do not ratify what the Legislature has done. The qualities of command and prohibition are in no sense with them, but in the Act itself—not subject to approval by the people. The law becomes operative on a *contingency,* it is true; but that contingency is not whether the people ratify anything contained in the Act, or reject anything there. It is something wholly different from that. A state of public sentiment is manifested by this vote, and thereupon, the legislative will becomes operative; but *not because* the *vote* says *it shall so operate.*

A statute, made to go into effect, upon a future uncertain contingency, is not for that reason void; many illustrations might be given, of which the school law of 1825, ch. 162, is an example. The law in that case went into effect only in such counties as voted for the "establishment of primary schools." In those voting against them, the Act was declared to be void, secs. 29 and 30. This to be sure, has been justified on the ground that it was a mere question of *taxation* referred to the people. But

Fell *vs.* State.

there were many things besides taxes provided for in that law. There is in it, a complete system, which went into operation or not according as the people voted in the counties.

But the general proposition that statutes may be passed, to take effect on a future contingency, would seem to be unquestioned. *Parker vs. State*, 26 *Vermont*, 364; *Brig Aurora vs. United States*, 7 *Cranch*, 382.

Does it invalidate the law, that the contingency, on which this Act is to become operative and effective, is a vote of the people, on the question, whether a license to sell liquors shall issue or not? *Does the nature of the contingency affect the question at all ? Parker vs. State,* 26 *Verm.*, 364; See also *Bull, et al. vs. Read, et al.*, 13 *Grat.*, 89; *People vs. Reynolds*, 5 *Gilman*, 18, 19; *Smith vs. The City of Janesville*, 26 *Wisconsin*, 291; *Cooley's Const. Lim.*, 120, *note* 1, 123; *People vs. Salomon*, 51 *Ill.*, 55; *Erlinger vs. Boneau*, 51 *Ill.*, 97; *State vs. O'Neill*, 24 *Wisconsin*, 153, 154.

It was perfectly competent for the Legislature to make the right to sell liquor dependent on the popular choice. It is nothing more than a regulation of the traffic in conformity with the wishes of those interested; a power which the State may exercise, a condition which it may impose under the police power.

The power to regulate this traffic, to make the sale dependent on just such conditions as it sees fit, or utterly to prohibit, with a view to prevent intemperance, crime and pauperism, and the suppression of disorders in society, is by an overwhelming mass of authority sustained everywhere, as a valid and appropriate exercise of the police power of the State. *Cooley on Const. Lim.*, 583, *and authorities cited.*

Nor can it affect the true nature of this discretion or power, as a condition precedent, because of the *manner* and the *time when* it is allowed to declare itself. It is the same

thing, whether it expresses itself by consenting or refusing to sign petitions, as in Indiana (See *Groesch vs. The State,* 42 *Indiana,* 547); the recommendation or refusal of "respectable citizens," as in Lancaster's case (mentioned in 25 *Md.,* 561); or the consent or refusal expressed by the people through their ballots, as in this case. The condition precedent may be anything the Legislature may see fit to declare, only so it be fair, reasonable and have relation to the subject-matter. And the approval of the people is certainly as fair, reasonable and as clearly related to such subjects, as the payment of so much money into the treasury, or the recommendations of certain citizens. *People vs. Reynolds,* 5 *Gillman,* 1; *Ball vs. Read,* 13 *Grattan,* 78; *Smith vs. The City of Janesville,* 26 *Wisconsin,* 291; *State vs. Court of Common Pleas of Morris,* 36 *New Jersey,* 42.

Does it affect the constitutionality of the law, that the Legislature sees fit to interdict the sale of liquor in the third district of Caroline County, after actual demonstration that a majority of the people there not only acquiesce in, but desire it?

If, whilst in session, the Legislature had ordered a vote on this subject, and upon being satisfied that a majority were unfavorable to a sale of liquor, it had passed a law prohibiting it, no one would question the perfect regularity and validity of the statute.

Is there any essential difference between that case and the one where the law is passed, perfect in all its commands and prohibition, to become operative, when it is known to be in accordance with public sentiment? It is not exactly understood how a law made in conformity with public will, is thereby unconstitutional, as being a delegation of law-making power to the people. And where, as in this case, it is clear that the thing submitted to the people is not whether they approve or reject the provisions of a statute as enacted, but simply whether a state of public sentiment

Fell *vs.* State.

exists ; on which it is expedient the enactment should ope-
rate ; this, clearly is not a delegation of legislative author-
ity to the people.    All the cases maintain, and some draw
this distinction.    *Haines vs. Hammond*, 25 *Md.*, 561 ;
*Bancroft vs. Dumas*, 21 *Vermont*, 456 ; *State vs. Parker*,
26 *Vermont*, 357 ; *Locke's Appeal*, 72 *Penn.*, 491 ; *Bull vs.
Read*, 13 *Grattan*, 78 ; *People vs. Reynolds*, 5 *Gillman*, 1.

BARTOL, C. J., delivered the opinion of the Court.

The appellant was indicted for selling spirituous liquors
on the 5th day of October, 1874, within the *third election
district* of Caroline County, in violation of the provisions of
the Act of 1874, ch. 453.

The case was submitted to the Circuit Court upon an
agreed statement of facts, set out in the record, and the
judgment being against the defendant, he has prosecuted
this appeal.

It is admitted that an election was held as provided by
the Act, on the second Tuesday of July, 1874, and that
the returns thereof were duly made by the proper officers,
that in the *third election district*, a majority of the votes cast
were against the sale of spirituous or fermented liquors ;
and on the 4th day of August, 1874, proclamation of the
result was made by the Judges of the Circuit Court, as pro-
vided by the Act.    It was also admitted that the sales were
made by the defendant as charged in the indictment.

If the Act of Assembly be valid, the offence comes clearly
within the *second and third sections.*    But it is contended
on the part of the appellant, that the Act is unconstitu-
tional and void, because it is alleged to be an attempt by
the Legislature to delegate to the legal voters of the dis-
trict, the power of making the law.    By the Constitution,
the legislative power is delegated to the General Assembly
exclusively, and that the power thus delegated, cannot
constitutionally be exercised by any other body or authority
is universally conceded.

Mr. Cooley, in his work on "Constitutional Limitations," page 117, says, "One of the settled maxims of constitutional law is that the power conferred on the Legislature to make laws, cannot be delegated by that department to any other body or authority."

This principle rests upon the established rule "*delegatus non potest delegari,*" and the application of this rule to the several departments of the government created by the Constitution, and clothed with the exercise of political power, is sanctioned both by reason and authority. The true question, therefore, is whether the Act of Assembly now under consideration is a delegation of the legislative power to the voters, and to determine this question it is important to examine the provisions of the Act.

*Section* 1 Provides for an election to be held on the second Tuesday of July, 1874, at which the voters of the several election districts, in the counties named, shall cast ballots "*for the sale of spirituous or fermented liquors*" or "*against the sale of spirituous or fermented liquors;*" and directs that the judges of the election shall make return of the votes to the Judges of the Circuit Court, who shall make proclamation of the result.

*Section* 2nd, Enacts that if it shall be found by the returns of the judges of election, and proclamation of the Judges of the Circuit Court, that a majority of the votes, in any district of either of said counties * * * has been cast against the sale of spirituous or fermented liquors, that then it shall not be lawful for any person, or persons, or body corporate to sell spirituous or fermented liquors, in any district of either of said counties voting by a majority against selling the same.

*Section* 3rd, Prescribes the penalty for a violation of the Act.

*Section* 4th, Provides that the Act shall take effect, immediately after it shall have been determined by a majority of the people in any one or more election districts of the

counties named, whether or not spirituous or fermented liquors shall not be sold, as before provided for.

Now what has been delegated to the voters by this Act of Assembly? Certainly not the power to make the law, or to repeal existing laws. They are called on by the first section simply to express, by their ballots, their opinion or sentiment as to the subject-matter to which the law relates. They declare no consequences, prescribe no penalties and exercise no legislative functions. The consequences are declared in the law, and are exclusively the result of the legislative will. The Act of Assembly is "a perfect and complete law as it left the halls of legislation and was approved by the Governor;" but by its terms, it was made to go into operation in any district, upon the contingency of a majority of the legal voters within the district, being ascertained to be in favor of the prohibition contained in the second section. The question before us therefore resolves itself simply into this. May the Legislature constitutionally enact a law, and make its operation depend upon the contingency of the popular vote? It has never been denied that "the Legislature may provide that an Act shall not take effect until a future day, or until the happening of some particular event, or in some contingency thereafter to arise, or upon the performance of some specified condition." A familiar example of such legislation may be found in the Acts of Congress, which came under review before the Supreme Court in the case of the *Brig Aurora vs. United States*, 7 *Cranch*, 382.

It was decided by this Court that "a valid law may be passed, to take effect upon the happening of a future contingent event, even where that event involves the assent to its provisions by other parties." *Mayor, &c. of Balt. vs. Clunet, et al.*, 23 *Md.*, 469; in support of this proposition many cases might be cited.

It has been well remarked by a learned Judge: "If the Legislature may make the operation of its Act depend on

some contingency thereafter to happen, or may prescribe conditions, it must be for them to judge in what contingency, or upon what condition the Act shall take effect. They must have the power to prescribe any they may think proper; and if the condition be that a vote of approval shall first be given by the people affected by the proposed measure, it is difficult to see why it may not be as good and valid as any other condition whatever. There can be no inherent vice in the nature of such a condition, which shall serve to defeat the Act, when it would be legal and effectual, if made to depend upon some other event. To say in such a case, that the Act is made by the voters and not by the Legislature, is to disregard all proper distinctions, and involves an utter confusion of ideas upon this subject.''

'' Wherever the contingency upon which a law is to take effect, depends upon the action of third persons, it might be said with equal truth, that the law was enacted by those persons instead of the Legislature.'' *Bull vs. Read,* 13 *Grattan,* 90, 91.

In the same case Judge LEE uses the following argument which seems to us to present the question in a very clear and forcible manner:

'' It will not be questioned, that it is entirely competent for the Legislature to provide for taking a vote of the people or any portion of them, upon a measure directly affecting them, and if a given number be in favor of its adoption, to enact a law thereupon, carrying it into effect. And there would seem to be but little difference in substance, in a reversal of the process, by first enacting the law in all its parts; but providing that its operation is to be suspended until it be ascertained that the requisite number of the people to be affected by it were in favor of its adoption.'' 13 *Grattan,* 88.

We refer also to the opinion of REDFIELD, C. J., in *The State vs. Parker,* 26 *Vermont,* 365, where the same views are expressed.

It must be borne in mind that the question with which we are dealing, is one of constitutional power. As to the wisdom or expediency of such legislation we are not authorized to judge. These are questions which under our system of government, are exclusively confided to the Legislature, and so long as that department acts within the constitutional limits of its authority, this Court has no power to sit in judgment on the wisdom, or expediency of its action.

The constitutional question here involved is not a new one in this State. In our judgment it has been distinctly passed upon by our predecessors in this Court.

By the Act of 1825, ch. 162, a general system of primary schools was established. The 29th and 30th sections of that Act were as follows:

"29th. *Be it enacted*, That at the next election of delegates to the General Assembly, every voter when he offers to vote, shall be required by the judges of election, to state whether he is for or against the establishment of primary schools, and the said judges shall record the number of votes for and against primary schools, and make return thereof to the Legislature, during the first week of the session, and if a majority of the said votes in any County shall be in favor of the establishment of primary schools as is therein provided for, then and in that case the said Act shall be valid for such County or Counties, otherwise of no effect whatever."

"Sec. 30th. *And be it enacted*, That if a majority of the votes of any County in this State, shall be against the establishment of primary schools, as established by this Act, then and in that case the said Act shall be void as to that County."

This law came before the Court of Appeals in *Burgess vs. Pue*, 2 *Gill*, 11, (decided in 1844.) Its validity was assailed, on the same ground as is now urged against the Act of 1874. That is, that its operation in any County was made to depend upon the result of a popular vote. It

was urged there as here, that the effect of the 29th and 30th sections, was to delegate the law-making power to the voters, which the Legislature could not constitutionally do. After a most full and able argument, the Court decided that the law was valid, and that there was no validity in the constitutional objection.

The same question again arose in a case between the same parties, 2 *Gill*, 254, and again the constitutionality of the law was maintained. It would be difficult to find a more solemn and authoritative decision upon any question than is presented by those cases ; and it would be equally difficult to distinguish the principle then decided, from that involved in the present case ; so far as it concerns the question of the supposed delegation of legislative power, by a submission to the popular vote to determine the contingency upon which a law is to go into operation. Again in *Hammond vs. Haines*, 25 *Md.*, 541, this Court by a unanimous decision held the Act of 1864, ch. 348, to be valid, and constitutional. That Act submitted to the qualified voters of the borough of North East, to decide by ballot whether any license should be granted to sell spirituous or fermented liquors within the borough.

The position of the appellant finds no support in the decided cases in Maryland. In other States there has been much conflict in the decisions. In some of them, the Courts have held laws to be invalid, because their operation was made to depend upon the contingency of a popular vote. Among the earliest of these cases are *Parker vs. Commonwealth*, 6 *Barr*, (*Penn.*,) 507, (decided in 1847 ;) *Rice vs. Foster*, 4 *Harr.*, (*Del.*,) 479, (decided about the same time ;) and *Barto vs. Himrod*, 4 *Selden*, (*N. Y.*,) 483. These were followed by the Courts of Indiana, Iowa, Michigan and some others. We do not consider it necessary to refer to these cases more particularly. In many of the States, decisions have been rendered by the Courts of last resort, in accordance with the ruling of this Court in

*Burgess vs. Pue,* and *Hammond vs. Haines.*   In Pennsylvania the leading case of *Parker vs. The Commonwealth,* which furnished the basis of many of the decisions in other States, cited by the appellant, has recently been overruled and reversed by the Supreme Court of the same State in *Locke's Appeal,* 72 *Penn.,* 491.   This last decision by that able Court was made after full argument, and an examination of the course of judicial decision upon the question, and is in accordance with the conclusions we have expressed.

In the examination of the question before us, we have kept in view the cardinal principle, which must always govern the Courts, when called on to pass upon the constitutionality of the acts of a co-ordinate department of the government.

Every intendment ought to be made in support of the legislative enactment, and it is not to be declared invalid, except for the plainest and most conclusive reasons.   In this case, we have failed to discover any sufficient grounds to justify us in declaring the Act of 1874, ch. 453, unconstitutional or inoperative.   So to pronounce would in our judgment be contrary to sound reason, as well as at variance with the previous decisions of this Court.

There can be no question of the power of the Legislature to fix the time when a law shall go into effect; nor can it be doubted that the Legislature has power to prohibit the sale of spirituous or fermented liquors, in any part of the State; notwithstanding a party to be affected by the law, may have procured a license, under the general license laws of the State, which has not yet expired.   Such a license is in no sense a contract made by the State with the party holding the license.   It is a mere permit, subject to be modified or annulled at the pleasure of the Legislature, who have the power to change or repeal the law under which the license was granted.   *Parkinson vs. State,* 14 *Md.,* 185.

Being of opinion that none of the objections to the validity of the law, urged by the appellant are valid ; the judgment of the Circuit Court has been affirmed.

*Judgment affirmed.*

(Decided 11th March, 1875.)

BOWIE, J., delivered the following dissenting opinion :

This being a test case, on the decision of which a number of others depended, involving questions of great importance, and being the only dissentient, I feel compelled, as much by respect to my colleagues as regard for enlightened public opinion, to assign the reasons which prevent my concurring in the conclusions of the majority of the Court.

The case was submitted to the Court below upon an agreed statement of facts, reserving the right of appeal.

It appears from the record, that the appellant was indicted at October Term, 1874, in the Circuit Court for Caroline County, for selling spirituous liquors on the 5th of October, 1874, at Denton, in the third election district of said county, "contrary to the Act of Assembly in such case made and provided," etc.

· It is agreed that at December Session, 1873-74, the General Assembly passed an Act entitled—

"An Act to enable the qualified voters of Queen Anne's, Caroline, Dorchester and Talbot counties, to determine by ballot, whether spirituous or fermented liquors shall be sold in said counties, or in any election district thereof, or a license granted for the sale of the same."

The Act, which was approved the 11th of April, 1874, is set out in the record, and enacts 1st, "That the question whether or not any person or persons, or any house may be licensed in any election district of either of said counties, shall be submitted to the voters of the counties respectively, on the 2nd Tuesday of July next ;" that an election shall be held in accordance with the law governing

the general elections of the State; that ballots for or against such sale shall be cast, and the judges of the general election shall return the vote to the Judges of the Circuit Court of the county in which such district is situated, and if it shall appear that either one or more election districts of either of said counties, shall have cast a majority against the sale of spirituous or fermented liquors, then the Judges of the Circuit Court shall make a proclamation of the result of such election, defining therein the district or districts, or the whole county or counties, as the case may be.

Sec. 2, enacts, that if it shall be found, etc., that a majority of the votes in any district of either of said counties, or all of them, has been cast against the sale of spirituous or fermented liquors, that then it shall not be lawful for any person or persons, etc., to sell spirituous liquors in any district of either of said counties, voting by a majority against the selling of the same.

Sec. 3, enacts, that every person convicted of a violation of the Act shall be fined not more than $300, nor less than $50, for every such offence.

Sec. 4, enacts, this Act shall take effect immediately after it shall be determined by a majority of the people, in any one or more election districts, whether or not spirituous liquors shall not be sold as provided for.

It is further admitted, that an election was held in the third election district of Caroline county, on the 2nd Tuesday of July, 1874, according to the Act of Assembly, and the judges of the election made return thereof, to the Judges of the Circuit Court, who afterwards on the 4th of August, 1874, made proclamation of the result of the election; and in the third election district of Caroline county there were 249 votes cast for the sale of spirituous liquors, and 340 against.

It was also agreed that the appellant was a resident of the third election district of Caroline county, doing business therein as a seller of spirituous and fermented liquors,

and that he made the sales charged in the indictment, having at the time a retail liquor license, trader's license, and ordinary license, issued the 1st of May, 1874, under the provisions of the 5th Art. of the Code of General Laws, to continue until the 1st of May next, all of which had been paid for and the money remitted to the Treasury, upon which statement of facts, the appellant was found guilty by the Court, and from the judgment thereon appealed.

The guilt or innocence of the accused depends upon the validity of the Act of Assembly, of 1874, ch. 453.

The gist of the offence is the violation of a Public Local Law, which, it is insisted, repeals the Public General Law. The traverser relies upon the license issued by the State, pursuant to Art. 56, Code of Pub. Gen. Laws.

The questions presented are,

1st. The constitutionality of the Act of 1874, ch. 453.

2nd. Its effect as repealing the license laws of the State.

The appellant insists, the Act under consideration is unconstitutional.

"Because the Act is not a complete law in itself, as it came from the hands of the Legislature, but is made to depend for its existence and operation as a law on the popular vote. In its terms and in effect, it is a delegation of the law-making power to the people."

2. "Because by its terms, it is to go into effect as a law, if at all, upon a contingency not in the purview of the Constitution, and at a period of time, not warranted by that instrument."

The appellee maintains the converse of these propositions ; denies there has been any delegation of authority ; and relies upon the statutes and decisions of this State as conclusive. Whatever deference may be due to the judicial opinions of the Courts of other States, if the points raised have been directly decided by our predecessors, we are bound to submit to the latter, unless very cogent reasons exist to the contrary.

Before attempting to review adjudged cases in other States, or to weigh their comparative merits as authority, we must endeavor to ascertain whether the question has been decided by this Court.

The cases referred to by the appellee are *Burgess vs. Pue,* 2 *Gill,* 11 *and* 254, and *Hammond vs. Haines,* 25 *Md.,* 541. The cases of *Burgess vs. Pue* were decided in this Court in 1844, and arose out of certain proceedings, adopted to enforce the payment of taxes, imposed by the inhabitants of a school district, in Howard District of Anne Arundel county, by virtue of an Act for the public instruction of youth in Primary Schools and its supplements.

The 29th and 30th sections of the Act, provided for the submission of the question of its adoption, to the voters of the several counties, and if the majority of said voters should be in favor of the establishment of primary schools as therein provided for, then the said Act should be valid for said county or counties, otherwise of no effect whatever; and "*e converso,*" if a majority should be against the establishment of primary schools, then the said Act should be void.

Other sections required the counties to be laid off into school districts, and authorized the taxable inhabitants of said districts to vote a tax on the assessable property in said districts, to build school houses, etc.

The appellee resisted the payment of the tax, on the ground among others, that the law was unconstitutional, being dependent for its validity and operation upon the votes of a majority of the voters of each county, and because it authorized a tax to be levied by one or more of the taxable inhabitants of the school district, on the assessable property of the district.

In support of these objections, it was urged by the appellee, that the reference to the people of the counties, for the sanction or obligation of a law, was no where recognized or warranted by the Constitution.

It was insisted that the counties had no separate political existence; they were not recognized by the Constitution as municipalities, with power of self-government, but as political divisions of the territory and were but component parts of the State, with no exclusive legislative powers within their own limits.

That the legislative power of the State was vested in a General Assembly, consisting of a Senate and House of Delegates, elected by the counties and cities, to the benefit of whose collective wisdom every citizen of the State was entitled in the enactment of laws and the imposition of taxes ; and the delegation of the power to adopt the law to the voters of the counties, and of the power to tax, to an indefinite number of taxables, destroyed the responsibility of the delegate to the constituent, and abolished all the guarantees of representative government, contrary to the Bill of Rights and the Constitution.

The learned Judge who delivered the opinion of the Court in the first case, took no notice directly of the first point—the submission of the law to the voters of the counties.

With regard to the second, he said :

" We think there was no validity in the constitutional question which was raised by the appellee's counsel, in the course of his argument relative to the competency of the Legislature to delegate the power of taxation to the taxable inhabitants for the purpose of raising a fund for the diffusion of knowledge and the support of primary schools. The object was a laudable one, and there is nothing in the Constitution prohibitory of the delegation of the power of taxation in the mode adopted to effect the attainment of it. We may say that grants of similar powers to other bodies, for political purposes, have been co-eval with the Constitution itself, and that no serious doubts have ever been entertained of their validity.   It is therefore too late at this day to raise such an objection."  2 *Gill*, 19.   Replying to the

argument that such legislation destroyed the relation of representative and constituent and the accountability of the former to the latter, the Court said : "It is not perceived how the Act in question can be deemed a violation of either of those principles of the fundamental law. The tax was certainly levied by the consent of the Legislature, because the power to impose it emanated from the legislative department of the government, and was expressly given by a law passed for that purpose, and there is nothing in it which can be considered as in the slightest degree impairing the responsibility of the law-making power to their constituents, for the due and faithful execution of the trust confided to them, because if deemed to be unwise or inexpedient, an expression of the popular will to that effect, was all that was necessary to procure its repeal." 2 *Gill*, 19.

This is an emphatic assertion, that the act of the voters is the Act of the Legislature, for which they are as responsible as if done directly by them ; adopting or applying to legislation, as broadly as in transactions between man and man, the common law maxim " *qui facit per alium facit per se*," and disregarding totally, the other axiom, " *delegatus non potest delegari.*"

Again, the power to delegate, is said to belong to the Legislature, because there was nothing in the Constitution prohibiting its exercise, and as a power which had been often exercised (although no instance was cited), from the foundation of the government without objection.

If these positions are correct they sanction all the delegation of legislative power which can be made, without regard to the character of the deputy. The Court in the case cited made no distinction between the delegation of legislative or taxing power to the inhabitants of counties, cities, municipal corporations, or school districts; all seemed in their opinion equally capable of being the depositories of the legislative will.

In the second case of *Burgess vs. Pue*, although the same objections to the constitutionality of the Primary School law were relied on, and more minutely, the Court assumed they had been disposed of by the decision of the first, and decided the case upon other grounds. It is suggested in some of the cases that the delegation of the power to tax for local purposes is the deputation of an executive or ministerial duty, and not the exercise of a legislative function. This view seems to be taken by Judge SHARSWOOD in *Locke's Appeal*, and other cases. No such distinction, however, was adverted to by this Court in deciding *Burgess vs. Pue;* they justified it upon the grounds that it emanated from the Legislature, was done with their assent, and was sanctioned by contemporaneous usage.

In this aspect of the case, in the passage of the Primary School law, there was a double delegation of the legislative will; first, in submitting the law for adoption by a majority of the voters of the county ; secondly, in the levying of taxes, by the taxables of the school districts. By the decisions of this Court, in *Burgess vs. Pue,* both of these delegations of power were affirmed, and the payment of taxes levied under them enforced by legal process.

A more solemn sanction of the exercise of authority after judicial examination can scarcely be imagined or produced.

In the interval between the decisions in 2 *Gill*, (1844,) and 25 *Md.*, (1866,) a number of cases had occurred in other States, involving the validity of laws submitted to the voters of counties, cities, towns and municipal corporations, in the course of which conflicting conclusions were reached in some instances, and refined distinctions adopted in others ; so that in the decision of the latter case, this Court had the benefit of the views of other tribunals, and therefore in its opinion was careful to distinguish between Acts of legislation, which had previously been deemed homogeneous.

In the case of *Hammond vs. Haines,* 25 *Md.*, 541, the appellant insisted that this Court had decided in *Burgess vs. Pue,* that the Primary School law was constitutional, notwithstanding the 29th and 30th sections; they being in the nature of conditions subsequent, which being void, left the law to operate independently of them, *"per se,"* and that the delegation of the power to tax, was granted to the taxable inhabitants as members of a *quasi* corporation. The appellee controverted these positions, relying on *Burgess vs. Pue,* as conclusive of the constitutional power of the Legislature to delegate its authority, as in that instance.

This Court, through WEISEL, J., delivering their opinion, referring to the argument in the case just cited, said: " The cases of *Burgess vs. Pue,* 2 *Gill,* 11 *and* 254, were strongly relied upon by the appellee in the argument of this case, as settling the question in this State, and establishing the validity of the law. Those cases arose under the operation of the Primary School Law above referred to (1825, ch. 162,) and the provisions of the 29th and 30th. sections of that law, submitting it to the votes of the people of the several counties, with a view to its adoption and operation in such as would vote accordingly, were urged in the argument as not warranted by the Constitution, and as avoiding the law. This Court, however, held the law to be constitutional, but not distinctly upon the ground that there was no force in the objection taken to those sections, but that it was competent for the Legislature to delegate the power of taxation to the taxable inhabitants for the purpose of raising a fund for the support of schools." 25 *Md.*, 560.

Without adopting or dissenting from the views expressed in *Burgess vs. Pue,* except by inference as heretofore indicated, the Court declining to regard *Burgess vs. Pue,* as conclusive on the point, assimilated the Act of 1864, ch. 348, then before them, to the Act of 1846, ch. 172,

prohibiting the clerk of Washington County, from issuing licenses within ten miles of St. James' College, without an order from one of the Judges of the Court—(an Act under which one Lancaster was convicted and fined, and which judgment was afterwards affirmed on appeal.) This law (1846, ch. 172,) the Court said, repealed all laws inconsistent with it, but left the license laws operative within the interdicted limits, if the Judge was satisfied of its propriety and necessity. Comparing the principal cases with that of Lancaster, the Court said:

"In the town of North East, a majority of its qualified voters, speaking through the ballot-box, was declared to have the effect of suspending the operation of the law within its limits. The effect was, or is, the same in both, one operating affirmatively, the other negatively; the mode of expressing the assent or dissent only being different. We regard both laws as virtually involving the same principle," etc.

After affirming the constitutionality of the Act of 1864, ch. 348, concluding their opinion, the Court significantly adds: "In deciding this law to be constitutional, this Court is not to be understood as embracing within its views the character of a law which would, in a broader or more enlarged sense, submit its passage or existence to the popular vote. Law (as has been most aptly defined) is the result of the legitimate action of legislative power. * * * The General Assembly, composed of the Senate and House of Delegates, is, in this State, the only law-making power."

In deciding the case of *Hammond vs. Haines*, this Court emphasized the fact that the privilege of deciding by ballot, whether any licenses to sell liquor should be issued by the clerk, was granted to the qualified voters residing in the *borough of North East*. They carefully guarded against the announcement of a general rule, which would sanction as constitutional, "a law which would, in a broader or more enlarged sense, submit its passage or its existence to

the popular vote." Hence, whatever conclusions might have been drawn from the action of this Court in the cases of *Burgess vs. Pue,* standing alone, when they are considered as interpreted and qualified by the opinion in *Hammond vs. Haines,* it is clear the judicial mind of this Court is not precluded from being governed by the force of principles or weight of authority which may preponderate on either side of this question.

It may further be said, that the subject which in the cases of *Burgess vs. Pue,* was "*res integra,*" and decided upon general principles almost without the citation of authority, has been since so thoroughly discussed in other tribunals, that it would be no disrespect to our learned and venerated predecessors to yield to the authority of more recent decisions.

Whether a law is constitutional or not must depend on the powers conferred on the Legislature by the Constitution under which it is organized, and by which it acts.

Although great similarity prevails in the provisions of the Constitutions of the several States (all of them, being republican,) yet in a portion of them a democratic element more or less exists, which originated in their colonial necessities, and has been recognized and continued by their State Constitutions.

Thus, in the New England States, and perhaps in some of the Western, founded upon their model, a system of towns or townships is established, which is thus briefly described by a recent essayist: "The entire area of the county is divided into a convenient number of towns, with boundaries definitely ascertained, and positively fixed by law, somewhat like our 'election districts,' but generally of smaller extent. Each of these towns is a body corporate, with all the powers necessary to a legal corporation. Every voter living within the boundaries of the town is, by virtue of his residence, entitled—as a stockholder in any ordinary corporation—to a voice in the management

of the business of the town.   Certain things are required
of these town corporations in conformity to general law.
The mode of meeting the requirements is determined, and
the town officers through whom it shall be done, are
selected by the voters assembled in general town meeting,
and acting as a pure democracy." * * * "The public
interests confided to the town administration are: the
ascertainment of the value of property; the levying,
assessment and collection of all taxes; the highways and
bridges, the schools and general educational interests, the
police of the town, and the direction and management of
all elections."—*Stickney's Township System,* 7.

Wherever the township system exists as a part of the
machinery of the State government, the powers of the
voter resident within the town are much broader and more
comprehensive than otherwise.

Local legislation is the inherent and distinguishing fea-
ture of this form of government, and wherever it exists,
there can be no question as to the constitutionality of laws,
which are made to depend on the assent or dissent of such
organized communities.

Hence, it will be found that in those States where this
peculiar system prevails, local option laws are generally
recognized as valid.

As far as inferences may be distinctly drawn from the
action of the two last Constitutional Conventions of this
State, the township system, or the investing the voters of
election districts with the powers necessary for the manage-
ment of their public local concerns, was deliberately with-
held from the General Assembly by the Convention of
1867.

The Convention of 1864, by Art. X of the Constitution,
entitled "Counties and Townships," section 1st, author-
ized the General Assembly to provide for organizing new
counties, and by section 2nd declared "the General
Assembly shall provide *by general law* for dividing the

Fell *vs.* State.

counties into townships, or permanent municipal corpora-
tions, in place of the existing election districts, prescribing
their limits and confiding to them all powers necessary for
the management of their public local concerns.''

The Convention of 1867, in their revision and amend-
ment of the Constitution, retained the first section of Art.
X. (which now constitutes section 1 of Art. XIII of the
Constitution,) and omitted section 2 referring to town-
ships entirely, virtually refusing to convert election dis-
tricts into municipal corporations.

It may, perhaps, be insisted that this express grant of
power was unnecessary, as, according to the rules of con-
struction as to State Constitutions, the Legislature possesses
all powers not prohibited or expressly reserved to the peo-
ple, but this rule must be subject to the implied limitation
imposed upon all delegations of power requiring the exer-
cise of discretion, that such powers must be exercised by
the delegate, and cannot be subrogated.

In the United States, the legitimate powers of govern-
ment are all exercised by agents specially designated and
entrusted with them by the Constitution, for the benefit of
the whole.   The elective franchise, or right of suffrage,
although often spoken of as an inherent original right, is
a trust committed to a special body for the benefit of the
whole.   An eminent writer on constitutional law says :

'' In most modern governments, including our own,
there are four distinct branches or departments, to which
are confided the powers delegated by the sovereign.   Of
these, the first is the *electors*, whose function is that of
choosing out of their own number the functionaries em-
ployed in the other departments, to which, in the United
States, is added that of enacting the fundamental laws.
The electoral body is the most numerous in the State
charged with an official function.   It comprises the suffrage
holders, or voters, or, in a qualified sense, the *people*, and
differs from the other three departments in that it consti-

Fell *vs.* State.

tutes a body which never assembles, but acts in segments of such convenient size as not to render conference and co-operation impracticable. The other three departments are familiar under the names of legislative, executive, and judicial departments, charged with the duties indicated by those terms respectively."—*Jamison's Constitutional Convention, p.* 23, *section* 24.

"By the term electors, according to the American Constitution, generally, with which alone we are now concerned, is meant that body of citizens, who, by the Constitution or laws of the State, have been invested with the rights, first, of choosing the most important administrative officers of the government, and secondly, of determining *by its direct vote the expediency of constitutional changes,* and *of enacting them.* The electoral body, as already observed, is by far the *most numerous corps of functionaries* in the State. It never assembles in a single body, as does the Legislature, but exercises its prescribed functions in determinate subdivisions of the public area, each of which constitutes an electoral circle, where alone the electors resident within it can exercise their franchise. Beyond the limited sphere of duty laid down for them in the fundamental law, this most important body has no power or official character whatever. It cannot pass an ordinary statute, or render a judgment, or execute a criminal. Its individual members, except in the simple act of casting their vote, in the cases prescribed by law, represent nobody, and hence, theoretically are entitled to no more weight than the still more numerous body of non-electors comprising the residue of the people. But, although while acting within their proper province, the electors, by their vote, are deemed to utter the voice of the sovereign, it is only the aggregate vote of the State, or what I might describe as the result out of all the separate votes of its individual electors, which can be thus characterized, not the vote of the individual, or of the subordinate circle which as such, has generally no official validity whatever."

Counties are the units of our State political organization, and of municipal government. As counties, we are represented in the Senate and House of Delegates of the General Assembly. As counties, we constitute portions of the several judicial circuits of the State. As counties, we elect our clerks, sheriffs, registers and commissioners. As counties, we assess our property and levy our taxes.

Election districts have no separate municipal existence, and in the language of the foregoing extract, the vote of the individual or of the subordinate circle has generally no official validity whatever.

Without a municipal organization there can be legally neither majority nor minority; the right of a majority to control the minority is a political right belonging to a community, or body politic.

An eminent jurist and writer on Constitutional Law declares : " No position is better established in American law than that ordinary legislation belongs exclusively to the Legislature proper, and cannot be delegated even to the people, or electors, who are in one sense superior to both Legislatures and Conventions. Thus the Supreme Court of Delaware, in a case where the question arose as to the constitutionality of an Act of the Legislature entitled ' An Act authorizing the people to decide by ballot whether the license to retail intoxicating liquors shall be permitted among them,' upon that question said : ' It is clear that neither the legislative, executive nor judicial departments separately, nor all combined, can devolve on the people the exercise of any part of the sovereign power with which each is invested. The assumption of a power to do so would be usurpation.' .* * ' The powers of government are trusts of the highest importance, on the faithful and proper exercise of which depend the welfare and happiness of society. These trusts must be exercised in strict conformity with the spirit and intention of the Constitution, by those with whom they are deposited ; and

in no case whatever can they be transferred or delegated to any other body or persons; not even to the whole people of the State, still less to the people of a county. * * * If the legislative functions can be transferred or delegated to the people, so can the executive or judicial power.' * * * 'All will admit that in such cases the people are totally incompetent to decide correctly. Equally incompetent are they to exercise with discernment and discretion collectively, or by means of the ballot-box, the power of legislation; because, under such circumstances, passion and prejudice incapacitate them for deliberation.' " *Rice vs. Foster*, 4 *Harr.*, (*Del.*,) 479. See also the following cases in which the same rule is maintained: *Bradley vs. Baxter*, 15 *Barb.*, 122; *People vs. Collins*, 3 *Mich.*, 343; *Case of the Borough of West Philadelphia*, 5 *W. & S.*, 281; *Barto vs. Himrod*, 4 *Seld.*, 483; *Maize vs. The State*, 4 *Porter*, (*Ind.*,) 342; *Barker vs. Com.*, 6 *Barr.*, 509; *Jamison on Constitutional Conventions*.

The general principles announced in these cases seem to be conceded by the counsel on each side, but the difficulty consists in their application to particular instances of legislation, in view of the conflicting decisions on this subject in different States, and sometimes in the supreme judicial tribunals of the same State.

"It is," says Paley, "a perversion of language to assign any law as the efficient operative cause of anything. A law presupposes an agent, for it is only the mode according to which an agent proceeds; it implies a power, for it is the order according to which that power acts. Without this agent, without this power, which are both distinct from itself, the law does nothing, is nothing."

In the language of this Court, in the case of *Hammond vs. Haines*, was the passage or existence of the law now under consideration, dependent on the popular vote? Much ingenious reasoning has been exerted to prove that whatever the Legislature directs shall or may be done

upon a certain contingency (although that contingency is the vote "aye or no" of local constituencies,) is done by the Legislature. The act of the Legislature being the primary cause, all the intermediate agencies, it is argued, are but legislative machinery, and the final result is the legislative will. It is logically true that if the Act of Assembly had not been passed, the voters of the election districts would not have had the power of suspending or repealing the license laws, or of prohibiting the sale of liquors within their respective districts; the Legislature is therefore the remote, and the electors are the proximate cause of the result.

Are the electors the agents of the Legislature in deciding the question of sale or no sale, license or no license? Or are they principals, whose will ultimately determines when the Act shall take effect?

In the words of the 4th section: "This Act shall take effect immediately after it shall have been *determined* by a majority of the people in any one or more election districts of Queen Anne's, Caroline, Dorchester, and Talbot counties, whether or not spirituous or fermented liquors, shall not be sold as before provided for."

The purpose of the Legislature to subordinate their will and judgment, to the wishes or will of the voters of the several election districts, in the counties named in the Act, is impressed upon all its parts.

The Act is entitled, "An Act to enable the qualified voters of Queen Anne's, Caroline, Dorchester and Talbot counties to *determine by ballot* whether spirituous or fermented liquors shall be sold in said counties, or in any election district thereof, or a license granted for the sale of the same."

Section 1st directs "that the question of whether or not any person or persons, or any house may be licensed in any election district" of either of said counties, "by whom, or in which, spirituous or fermented liquors may

be sold, shall be *submitted* to the voters of said counties, respectively, on the second Tuesday in July next," and prescribed the manner of holding the election and proclaiming the result.

Section 2nd enacts, that if it be found that a majority of the votes in any district of either of said counties or all of them, has been cast against the sale of spirituous or fermented liquors, "that then it shall not be lawful for any person or persons, or body corporate, to sell spirituous or fermented liquors in any district of either of said counties voting by a majority against the selling of the same."

Section 3rd imposes a penalty for violation of the Act in selling spirituous liquors, in any of the election districts where a majority has been cast against the sale.

Section 4th declares the Act shall take effect immediately after it shall have been determined by a majority of the people, in any one or more election districts, etc., whether or not spirituous or fermented liquors shall not be sold as before provided for.

It is obvious from this analysis of the Act that its modal provisions, operated under the general provision of the Constitution, from and after the first of June, so far as to authorize the holding of the election; but its penal and prohibitory clauses, (if constitutional,) took effect at the time prescribed in them respectively. Regarding these latter clauses, however, not as to the time of their operation, but as evidence of the source or will which was to put them in motion, as a rule of conduct, the animus or will is that of the voters, not of the Legislature.

There is a material variance in the language of the second and fourth sections, as to the body of the majority, who are to act; in the former, if a majority of the votes in any district is cast against the sale, it is enacted, it shall not be lawful to sell; in the latter, it is declared, the Act shall take effect after it shall have been *determined* by

a majority of the *people* in any one or more election districts.

Assuming the words *"voters"* and *"people"* to be used as synonymous, their determination or decision makes that unlawful, which was before legal, and subjects the violator of the law to prosecution and punishment.

It is urged on behalf of the State, that there is no substantial difference between the Act of 1864, (known as the North East Act,) and the Act of 1874.

"They both submit the question, whether there may be a license to any person, or any house, by whom or wherein spirituous liquors are sold."

The borough of North East was a municipality having a local government, and constituting a community in itself, to which it was competent for the Legislature to impart, if it had not previously done so, the right of making police regulations. This class of cases is an acknowledged exception. Election districts have never heretofore been regarded as corporations, or *quasi* corporations; and unless the Act of Assembly which enables them to do such acts, as the present, constitutes them *"per se,"* quasi corporations, there is no analogy between them.

The appellee argues that the Act of 1874 is only an instance of a law, enacted to go into effect upon a certain contingency, to be ascertained by the voters, upon which the law makes its action to depend.

Whatever is uncertain is in one sense a contingency, but it is not in that sense that the Act in this case depends for its vitality. It emphatically rests on the volition of the voters of the election districts, having no corporate character which authorizes the majority to bind the minority, by laws or ordinances. When a man becomes the citizen of a State, a city, or borough, he tacitly binds himself to be bound by the laws of the community; but a citizen of an election district does not engage to be bound

by the voices or the votes of a majority of such districts, because they have no political powers as such.

This mode of legislation virtually deprives him of the barriers which the Constitution has erected against popular passions, prejudice and excitement. It may be resorted to now in behalf of moral reform, education, internal improvement, etc., but once established as a legitimate exercise of power, there is no popular phrensy which it may not be invoked to sustain.

The Supreme Court of New Jersey, in the late case of the *State, ex rel. Sandford vs. Court of Common Pleas of Morris*, 38 *N. J. Law Rep.*, 72, considered the constitutionality of the Chatham Local Option Law, and held it to be valid.

1st. Upon the ground that the Legislature, under the power to make police regulations, may prohibit the retail of alcoholic stimulants.

2d. That municipal corporations and townships may be invested with authority to regulate or prohibit the sale of intoxicating drinks.

Having set out the provisions of the Act authorizing the persons qualified to vote at the next annual town meeting, to determine by ballot, whether thereafter license to sell spirituous liquors should be granted; and if it should appear that a majority of the votes were cast for "no license," it should not thereafter be lawful to grant any such license, until otherwise decided by a contrary vote at some subsequent town meeting, and declaring all Acts inconsistent therewith were repealed, the Court proceeds: "The local option law is alleged to be in conflict with that article of our State Constitution, which provides that legislative power shall be vested in a Senate and General Assembly. It must be conceded that this law can have no sanction if it is a delegation of the law-making power to the people of the township. If the right to declare what the law shall be in one case, may be referred to the people,

the right to do so may be given in all cases, and thus the Legislature may divest itself wholly of the power lodged in it by the fundamental law, until by subsequent legislation it shall be resumed. It is also obvious it is not competent to delegate to the people the right to say whether an existing law shall be repealed or its operation suspended. To say that what is now the law shall not hereafter, or shall not for a specified time, be the law, is in effect to declare the law to be otherwise than it now is, and is a clear exercise of the law-making power. The will of the Legislature must be expressed in the form of a law by their own act. If it is left to the contingency of a popular vote to pronounce whether it shall take effect, it is not the will of the law-makers, but the voice of their constituents which moulds the rule of action. If the vote is affirmative it is law; if in the negative, it is not law. The vote makes or defeats the law, and thus the people are permitted unlawfully to resume the right of which they divested themselves by a written Constitution, to declare by their own direct action what shall be the law. The cases upon this subject, so far as they assert the principles above stated, have my entire concurrence.''

After this very clear and cogent exposition of the constitutional limitation on the powers of the Legislature, the Court declares the law in question to be complete in form and in effect, prohibiting the sale of liquor without license, and declaring that the license shall only be issued on the contingency that a majority of the voters in the township are in favor of license.

Distinguishing the case from *Rice vs. Foster* and *Parker vs. The Commonwealth,* the Court said:

"In those cases, the prohibition and penalty were not denounced by the law itself, but by the popular vote. The selling of liquor was not pronounced to be unlawful; it was referred to the people to determine whether it should be restrained.'' So in the law proposed to be passed at the

last session of our Legislature : "the offence defined by
the Act could not be committed, unless the voters of the
town determined that license should not be granted."

Referring to the police powers of the Legislature, the
opinion declares : "If this is construed as an Act author-
izing the township by a majority vote to prohibit the retail
traffic in liquors it may still be supported."  *  *  *  *

"The inhabitants of the several townships in this State
are incorporated by a general law.  They have heretofore,
without question, exercised many powers, through a direct
vote of the people."

Without intending to intimate that the very ingenious
reasoning of the Judge in this case is over refined and sub-
tle in the extreme, it is apparent he acknowledges in their
utmost breadth, the restrictions imposed by constitutional
provisions upon the delegation of legislative power, and
only sustains the law, after a most elaborate argument to
show it does not violate them.

The case is also one of the class already recognized, as
an exception to the general rule, being that of a munici-
pality, to which police powers are necessarily granted for
the better regulation of the community.

To make the constitutionality of a law, depend upon nice
distinctions of language, rather than upon its actual opera-
tion and effect, would destroy all the limitations imposed
by constitutional provisions, and render the fundamental
principles of government nugatory and vain.

Among the most recent and well considered cases on this
subject, is that of *Ex parte Wall* in the Supreme Court of
California.  48 *Cal.*, 279, 313.

The Legislature of that State passed an Act on the 18th
of March, 1874, "To permit the voters of every township
or incorporated city to vote on the question of granting
licenses to sell intoxicating liquors ;" under which an elec-
tion was held in the Fourth Township of Contra Costa
county, at which a majority of the votes was cast "against

license ;'' and the petitioner, being afterwards convicted of an alleged violation of the law, was sentenced to imprisonment.

The Court having recognized as established law the position that the power to make laws conferred upon the Legislature cannot be delegated to the people of the State, or any portion of the people, addresses itself to the arguments used in this case, that to enact a law to take effect, provided the people shall vote in favor of it, is not to delegate the law-making power.

Admitting that laws may be conditional, or contingent, as in the case of the non-intercourse law, 7 *Cranch,* 382, it is insisted in that instance '' the members of Congress exercised their own judgment and simply determined that trade should be suspended, while the orders in council or edicts should continue.''

In answer to the argument that the Act may be contingent, the Court said : '' It does not follow that a statute may be made to take effect upon the happening of any subsequent event which may be named in it.    The event must be one which should produce such a change of circumstances as that the law-makers—in the exercise of their own judgment—can declare it to be wise and expedient that the law shall take effect when the event shall occur.''

'' The Legislature cannot transfer to others the responsibility of deciding what legislation is expedient and proper, with reference either to present conditions or future contingencies.    To say that the legislators may deem a law to be expedient, provided the people shall deem it expedient, is to suggest an abandonment of the legislative function by those to whose wisdom and patriotism the Constitution has intrusted the prerogative of determining whether a law is or is not expedient.    Can it be said in such a case that any member of the Legislature declares the prohibition or enactment to be expedient?''

'' A statute to take effect upon a subsequent event when, it comes from the hands of the Legislature, must be a law

'*in præsenti*' to take effect '*in futuro.*' On the question of the expediency of the law, the Legislature must exercise its own judgment definitely and finally. If it can be made to take effect on the occurrence of an event, the Legislature must declare the law expedient if the event shall happen, but inexpedient if it shall not happen. They can appeal to no other man or men to judge for them in relation to its present or future propriety or necessity; they must exercise that power themselves, and thus perform the duty imposed upon them by the Constitution. But in case of a law to take effect, if it shall be approved by a popular vote, no event affecting the expediency of the law is expected to happen. The expediency or wisdom of the law, abstractly considered, does not depend on a vote of the people. If it is unwise before the vote is taken, it is equally unwise afterward. The Legislature has no more right to refer such a question to the whole people than to a single individual. The people are sovereign, but their sovereignty must be exercised in the mode pointed out by the Constitution." *Barto vs. Himrod,* 8 *N. Y.,* 483; *Rice vs. Foster,* 4 *Harr.,* 479.

In the cases of *Alcorn vs. Harmer,* and *Same vs. Hill,* 38 *Miss.,* 652, all the former cases were reviewed in 1860, by the Supreme Court of Mississippi in a very thorough and deliberate decision after an exhaustive argument.

The Court assumed as a proposition not to be disputed, that the legislative authority cannot be returned to the people, nor delegated to any other power; and that no Act can be binding as a law, unless it has received a final action from the legislative will—p. 750.

The cases of *Rice vs. Foster,* 4 *Harr.,* 479, (decided in 1847,) *Parker vs. The Commonwealth,* 6 *Barr,* 507, by the Supreme Court of Pa., (decided some months afterwards) *Barto vs. Himrod,* decided by the Court of Appeals of New York in 1853, and *Maize vs. The State of Indiana,* 4 *Ind.,* 342, announcing the same doctrine, were all approved, yet

they distinguished the Act of the Mississippi Legislature, then under consideration, from those cases, and held it valid.

In support of the conclusion arrived at, it is ingeniously argued by the Court, "that if the Legislature have the right to enact a statute, and make it depend for coming into force upon a vote of a district, or a portion of the people, that the power is not derived from the fact that the persons who are to vote upon the proposition, are associated together as members of the same municipal body, or as inhabitants of some legal or constitutional sub-division of the territory. For in all cases of a corporation, or *quasi* corporation, the rights, privileges and powers of the corporators, or the body appointed to act for it, are conferred in the act of creating such corporation. And no one will maintain that by the passage of an Act creating a corporation, the legislative power has been enlarged so as to authorize it to delegate an authority to such corporation, which it was incompetent to confer in the first instance. If the Legislature possess the authority at all, it must of necessity derive it from the Constitution, the source whence proceed all of the powers of government.'"

The creation of municipal corporations, is one of the ordinary exercises of legislative power in this country.

The right to manage their local affairs is usually expressly conferred by their charters, subject to the supervision of the Legislature. All their ordinances are, of course, made with this proviso implied.

Every charter is a constitution to the community authorized; its by-laws and ordinances are laws to its corporators.

The right of self-government, with all its guarantees, is therefore retained in the municipality, but in the case of legislation, by the mere vote of the majority of an election district, there is no pre-existing charter or constitution prescribing the mode of local government, no separate political organization, no distinct communal existence,

capable of acting as an unit, and no corporate powers conferred by the Act submitting the question to the people.

The power of the Legislature is not enlarged by the municipal character of the community, to which the adoption or rejection of the law is submitted, but it is the capacity of the community to exercise such functions as are incident to municipal government that makes the difference.

In the one case, there is no delegation of power; the authority, though derivative, is inherent and incidental; conferred by charter or by-law upon a body competent to receive and exercise it.   In the other, there being no body politic in existence to exercise such functions "*per se*" they must be performed, if at all, by the voters as deputies of the Legislature.

All the cases show that the distinction between conferring the power of local legislation upon municipalities, or townships, and unorganized bodies of the people, is too well recognized to be departed from.

In *Commonwealth vs. Bennett*, 108 *Mass.*, 27, the Court said, "Many successive statutes of the Commonwealth have made the lawfulness of sales of intoxicating liquors to depend upon licenses from the selectmen of towns or commissioners of counties, and such statutes have been held to be constitutional.   7 *Dane's Abrid.*, 43, 44; *Commonwealth vs. Blakington*, 24 *Pick.*, 352.   It is equally within the power of the Legislature to authorize a town by vote of the inhabitants, or a city by vote of the City Council, to determine whether the sale of particular kinds of liquors within its limits shall be permitted or prohibited.   This subject, although not embraced within the ordinary power to make by-laws and ordinances, falls within the class of police regulations, which may be intrusted by the Legislature by express enactment to municipal authority.   *Commonwealth vs. Turner*, 1 *Cush.*, 493, 495 ; *State vs. Noyés*, 10 *Foster*, 279 ; *Bancroft vs.*

*Dumas,* 21 *Verm.,* 456 ; *Turner vs. Trustees of Albion,* 5 *Hill,* 121 ; *State vs. Simmonds,* 3 *Mo.,* 414.''

This decision was approved and re-affirmed in *Commonwealth vs. Dean,* 110 *Mass.,* 357.

The most recent case conflicting with those last cited, and sustaining the constitutionality of local option laws, which was pressed upon the attention of the Court, was that of *Locke's Appeal,* 72 *Penn. State Repts.,* 491, decided in May, 1873.

The Act of Assembly of Pennsylvania under consideration in that case, provided, that at the next municipal election in the twenty-second ward of the City of Philadelphia * * * the voters shall decide for license, or against license, by depositing their tickets, and that a return be made to the clerk of the Quarter Sessions. Whenever the election shall go *against* the license, it shall be unlawful for any license to issue for the sale of spirituous liquors, etc., in said ward.

Any person who shall be convicted of selling or offering for sale without license contrary to the provisions of the Act, was made liable to a fine of $50, and confinement in the House of Correction. The validity of this law, was assailed on account of its being a supposed delegation of the legislative power. The Court of Appeals of Pennsylvania, by a vote of three, to two judges, sustained the law, the majority conceding that the legislative will could not be delegated without violating a cardinal principle of representative government, but contending that legislation in that form, was not a delegation of legislative authority.

This decision, being directly contrary to that of *Parker vs. Commonwealth,* 6 *Barr,* which had been a leading case on the subject, adopted and followed in many other States, much of the learned opinion of the majority in Locke's case is devoted to an exposure of the error of the learned Judges who decided Parker's in 1846.

It is said, in commenting on *Parker vs. Commonwealth*, "it was decided by three judges to two, with a strong dissent proceeding from the latter." If there is any force in this remark, it is the exact representation of the case of Locke's Appeal, the opinion of READ, Ch. J. and SHARS-WOOD, being strongly adverse to the law. The weight of judicial authority in Pennsylvania may, therefore, be regarded as equipoised.

In addition to the objections urged against the Act of 1874, ch. 453, as a delegation of the legislative power to the voters of the election districts, in the several counties therein named; it may be urged, that it violates the clause of our State Constitution which declares, the General Assembly shall pass no special law for any case for which provision has been made by an existing general law. Art. 3, sec. 33. There can be no doubt that the Pub. Gen. Laws of the State had provided for the mode of issuing licenses throughout the State, a system, which it was the object of the Act in question to revise and amend, or altogether repeal; and yet the Public Local Law (if it may be so called,) of 1874, ch. 453, in contravention of another article of the Constitution, does not so much as allude or refer to any pre-existing laws on the subject, or declare the same repealed. *Constitution of Maryland, Art. 3, sec. 29.*

The General Revenue Laws of the State, are thus attempted to be annulled by implication, in four counties, without the slightest regard to the most solemn provisions of the Constitution. The violation of the public faith of the State, pledged by the issuing of licenses, under its seal, for a *bona fide* and valuable consideration, however sanctioned by a remote analogy to other cases, seems to me, wholly in disregard of the principles of natural justice, which the highest authorities insist, are as obligatory upon legislative bodies, as constitutional inhibitions. "*Jura naturæ sunt immutabilia;*" they are "*leges legum,*"—

"*Nec vero per Senatum aut per populum, solvi hœc leges possumus,*" says Cicero.

The law of nature stands as an eternal rule to all men, (says Locke,) legislators, as well as others; and the rules they make for other men's actions must be conformable to the will of God, of which *that* is a declaration. "Vast as is the power of an Act of Parliament, there are some things which it cannot do; it cannot abrogate those living laws imprinted in our hearts from the commencement of our being. It can do no wrong."—*Dwarris on Statutes,* 643, 44-45.